MAYFIELD WOOLEN MILLS v. LEWIS.

Opinion delivered March 8, 1909.

1. EXECUTIONS—RIGHT OF OFFICER TO DEMAND INDEMNIFYING BOND.—Under Kirby's Digest, § 3246, providing that "if an officer who levies or is required to levy an execution upon personal property doubts whether it is subject to execution, he may give to the plaintiff therein or his agent or attorney notice that an indemnifying bond is required," the doubt as to whether the property is subject to execution must not be an arbitrary one, but must arise when the officer acts in good faith, and a claim is actually made relative to the property, or such circumstances exist as might well justify a prudent person in apprehending litigation relative thereto.    (Page 494.)

2. SAME—LIABILITY FOR FAILURE TO SELL PROPERTY LEVIED UPON.—A constable who unlawfully neglects or refuses to sell property levied upon by him under execution may be proceeded against under Kirby's Digest, § 3286, to recover the statutory penalty or under the common law to recover damages sustained by such neglect or refusal. (Page 495.)

3. SAME—CONSTRUCTION OF PENAL ACT.—Kirby's Digest, § 3286, providing a penalty for the neglect or refusal of an officer to whom an execution has been delivered to sell property levied upon by him thereunder, etc., is highly penal, and its terms should not be extended by construction to cases not within its plain meaning. (Page 495.)

4. SAME—WHEN FAILURE TO SELL EXCUSED.—To a proceeding against a constable to recover the penalty provided by Kirby's Digest, § 3286, for neglect or refusal to sell property levied upon by him, it is a good defense that the sale was not made on the day it was first advertised because the officer demanded an indemnifying bond which was not given, and that the property was thereupon advertised for sale on a day within the life of the execution but before the day of the sale the property was taken from him under bankruptcy proceedings instituted by the execution debtor.    (Page 495.)

Appeal from Union Circuit Court; George W. Hays, Judge; reversed.

R. G. Harper and Thornton & Thornton, for appellant.

An officer cannot arbitrarily demand an indemnifying bond and refuse to levy an execution or sell after levy, if it is not given. He cannot act solely on his own will or caprice, but must have some reasonable cause for failure to levy or sell.   25 Am. & Eng. Enc. of L. 2d Ed., 691; Id. 391; 23 Ala. 626; 3 Port. (Ala.) 385; 13 La. Ann. 437.

FRAUENTHAL, J.  The appellant, who was the plaintiff below, instituted this suit against the appellees, and in its complaint alleged that W. S. Lewis, one of the defendants, was constable of Lapile Township in Union County, and that the other defendants were sureties upon his official bond.  That the plaintiff had recovered two several judgments before the justice of the peace of the above township against Tucker and Woods, aggregating $507, and that on the 4th and 6th days of May, 1905, executions were duly issued upon said judgments against the property of said Tucker and Woods, and were directed and delivered to said Lewis as such constable in manner prescribed by law.  That on May 8, 1905, said Lewis as such constable and by virtue of said executions levied the same upon the goods and chattels of the defendant in said execution of the value of $981.01, and advertised same for sale on May. 20, 1905; but that the constable thereafter neglected to sell the goods so levied on, or any part thereof; that the defendants in the execution became thereafter wholly insolvent; and that by reason of the negligence of said constable the plaintiff lost its debt.  And the plaintiff asked for judgment for the $507 and interest and ten per cent. damages.

The defendants admitted, in their answer, that the judgments were recovered in favor of plaintiff, but denied that the executions issued thereon were delivered to the defendant, Lewis. They alleged that the executions were delivered to one Baker, who was not the deputy of the constable.  That when said Lewis, constable, was notified of the issuance and levy of said executions, and before the time set for the sale of the goods levied on, he doubted whether the same was subject to execution and gave notice to the attorney of plaintiff and demanded an indemnifying bond, which was refused; and that for this reason Lewis refused to sell the property levied on under the executions.  They denied that plaintiff lost its debt by reason of the failure of the constable to sell the property; but alleged that the defendant in the execution was preparing to file a voluntary petition in bankruptcy, which he at once did; and that the above goods were taken charge of and administered under said bankruptcy proceedings, and that in said bankruptcy proceedings the debt of plaintiff was proved and allowed, and thereunder plaintiff received its *pro rata* of the proceeds of said bankrupt's estate.

Upon a trial of the case a verdict was rendered in favor of the defendants, and from the judgment given thereon the plaintiff appealed.

In the trial of the cause below the only issue that appears to have been presented by the instructions, and the only issue that appears to have been attempted to be fully developed by the evidence, was the one set out in that part of the answer which alleged that, before the time set for the sale of the goods levied upon, the constable, doubting whether the same was subject to execution, demanded an indemnifying bond; and, the giving of this bond by plaintiff being refused, the constable refused to sell the property under the executions for that reason.

The evidence tended to prove that the executions were issued upon the judgments in favor of plaintiff as set out in the complaint, and were delivered to one Baker, as deputy constable of Lewis; and that Baker was the deputy of the constable, Lewis. That on May 8, 1905, the said deputy constable levied said executions upon a stock of goods of the value of $981.01 as the property of C. B. Wood, one of the defendants in said executions; and that he duly advertised the sale of the goods thereunder for May 20, 1905. The constable, Lewis, testified that on May 17, 1905, he learned of the issuance and levy of the execution by his deputy and the advertised sale thereunder, and that on that day he demanded from the attorney of plaintiff an indemnifying bond before he would proceed with the sale, and again demanded this bond on May 20, 1905; and because a sufficient indemnifying bond was not given him by the plaintiff or its attorney is the reason why he refused to make the sale under the executions. He also stated that the reason why he demanded the giving of an indemnifying bond was that he demanded such bond in all cases of making levy and sale under execution; and also because he heard that the defendant in the execution was going into bankruptcy. He also stated that he thought the goods belonged to Mrs. Woods, but in the same connection he testified that she was not claiming and did not claim the goods; and other evidence tended to prove that she never did at any time claim to own the goods. No other reason was given for the demand by the constable for the indemnifying bond.

The evidence tended to prove that prior to May 20th an

indemnifying bond was given to the deputy constable, and that the surety thereon was the attorney of plaintiff; that on the day advertised for the sale of the goods under the execution the constable notified the attorney that the bond was not sufficient, and another indemnifying bond would have to be given. This was not done, and the constable refused to make sale of the goods.

The following are all the instructions that were requested by the defendants, and they were given by the court:

"1. The court instructs the jury that if an officer who levies an execution, or is required to levy an execution, on personal property doubts whether it is subject to execution, he may give the plaintiff in said execution, or his attorney or agent, notice that an indemnifying bond is required. Bond may, therefore, be given by or for the plaintiff, with one or more sufficient sureties, to be approved by the officer, to the effect that obligors therein will indemnify him against the damage he may sustain in consequence of the seizure or sale of the property, and will pay to any claimant thereof the damage he may sustain in consequence of the seizure or sale, and will warrant to any purchaser of the property such estate or interest therein as is sued on. The officer thereupon shall proceed to subject the property to the execution, and shall return the indemnifying bond to the court from which it is issued.

"2. The court instructs the jury, if the bond mentioned in the first instruction is not given, the officer may refuse to levy the execution, or if it had been levied, and the bond is not given in a reasonable time after it is required by the officer, the officer may restore the property to the person from whose possession it was taken, and the levy shall stand discharged.

"3. The court instructs the jury that if they find a bond was demanded by the officer, and bond was furnished, signed by the plaintiff and its attorney, yet if you further find from the evidence that the defendant, in the reasonable execution of his official duty, believed the bond insufficient, and so notified the plaintiff's attorney, and on account of said bond being insufficient refused to sell, then in that event you are instructed that the defendant had the right to refuse to sell, and your verdict must be for the defendant."

The plaintiff requested that the court give the following instruction to the jury, which was refused:

"The jury are instructed that an officer called upon to levy an execution, or to make a sale under a levy already made, cannot arbitrarily demand an indemnifying bond; and if you find. from the evidence in this case that the property levied on was the property of the defendant in the execution, and was not exempt under the exemption laws of this State, and that no other person was claiming the same, nor setting up any title thereto, but that the defendant in the execution, C. B. Wood, was then present and admitting the property to be his own, and that the only reason that the defendant, Lewis, had for demanding an indemnifying bond was that he had heard that the defendant in the execution was contemplating filing a petition in bankruptcy, and he thought that some of the property might belong to the defendant's wife, although he had never heard any one say so, and that she was not claiming the same, then, under the law, said Lewis had no right to demand of plaintiff an indemnifying bond."

The question thus presented for determination is, what is a proper case in which an officer can demand indemnity for levying an execution upon property or for making sale thereof under such execution? In order to arrive at a proper solution of this question, it is well to examine what are the duty and responsibility of such an officer under the common law when he receives an execution, and to what extent that duty and responsibility have been modified or relaxed by the practice of our courts or the statutes of our State. By the common law it is the first duty of such an officer after he receives an execution to make reasonable effort and inquiry to ascertain whether the defendant in the execution has any property in his township or county subject to levy; and if he finds any such property in the possession of the defendant, it is his duty to levy the execution thereon; and it was his duty to make such levy whether the property was claimed by a third person or not. It devolved upon the officer, under the common law, to show that such property was not subject to execution, if he failed to make the levy. On the other hand, if he made the levy and the property actually belonged to a third person, he became liable to the true owner for trespass or conversion. In this dilemma, he could not, under the common law, demand indemnity from the plaintiff, even though the third person asserted his title to the property in the most solemn man-

ner. In the performance of his duty the officer was thus required to act at his peril.

But this embarrassing position of such officer has been greatly modified, and his responsibility relaxed, both by the practice of the courts and the statutes of the various States. By the English practice the officer was permitted to show to the court issuing the writ that disputes in reference to the title to the property existed; and it was discretionary with the court to interpose its protection; and this discretion seems always to have been exercised in his favor whenever it appeared that doubts in regard to the title to the property were reasonable and the officer acted in good faith. And therefore it permitted the officer to obtain indemnity in cases where the title was involved in substantial doubt.

In many of the States it is provided by statute under what circumstances an officer may demand a bond of indemnity. And the general effect of these statutory provisions and the practice of the courts is that where reasonable doubt exists either with respect to the title or to the defendant's right to hold the property as exempt from execution, the officer may demand indemnity from the plaintiff, and upon his failure or refusal to give same the officer is warranted in not seizing or not holding the property. But a mere suspicion or rumor that the property was not subject to seizure, it is held in a great majority of the States, will not excuse the officer in his failure or refusal to make a seizure, if the property is in fact subject to the execution. 25 Am. & Eng. Ency. Law (2d Ed.), 692, 693; 2 Freeman on Executions, § § 254, 274a, 275; *Whitsett* v. *Slater,* 23 Ala. 626; *Marshall* v. *Simpson,* 13 La. Ann. 437; *Parks* v. *Alexandria,* 29 N. C. 412.

So that, in the absence of statutory provision giving in detail the circumstances under which indemnity could be demanded by the officer, a reasonable rule was established. That rule prescribed that the officer could not refuse to execute every final process without indemnity. On the other hand, the officer should not be restricted to cases where the opposing or involved claim was obviously formidable. The officer is entitled to his indemnity "whenever a claim is actually made or such circumstances exist as might well justify a prudent person in apprehending litigation." Murfree on Sheriffs, § § 619, 620.

Section 3246 of Kirby's Digest provides: "If an officer who levies or is required to levy an execution upon personal property doubts whether it is subject to execution, he may give to the plaintiff therein or his agent or attorney notice that an indemnifying bond is required." And section 3247, Kirby's Digest, provides: "If the bond mentioned in the last section is not given, the officer may refuse to levy the execution; or if it had been levied and the bond is not given in a reasonable time after it is required by the officer, he may restore the property to the person from whose possession it was taken, and the levy shall stand discharged."

Now, this statute does not provide that the officer can at his own election demand the indemnifying bond. If it had been the intention of the Legislature to permit the officer to require indemnity in every case where an execution was placed in his hands, it could easily have used apt words to express that intention. But it provided that it should only be required in cases where the officer doubted that the property was subject to execution. The Legislature thus presupposed that in certain cases upon a due consideration of the circumstances a doubt might arise as to whether the property was subject to the execution. So that there would have to be circumstances that would cause this doubt to arise, and the doubt would thus be founded on some reason, and would not be based on the sole arbitrary determination of the officer. To hold otherwise would permit the officer to act in bad faith; would permit the officer to act with favor towards either party; would permit an absolute control of final process by an officer, when the statute does not so specifically provide.

We are therefore of the opinion that under the provisions of the above sections the doubt as to whether the property is subject to execution arises when the officer acts in good faith and a claim is actually made relative to the property or such circumstances exist as might well justify a prudent person in apprehending litigation relative thereto; and in such cases the officer has the right to demand an indemnifying bond. And the officer in whose hands an execution has been placed cannot arbitrarily demand an indemnifying bond.

The court erred therefore in refusing the above instruction requested by the plaintiff.

As this cause must be remanded for a new trial, we note some other questions that appear to be involved in the case, but which were not developed sufficiently in the trial for a determination thereof.

As before stated, it would appear, from the instructions that were given to the jury, that the sole issue submitted and tried was the right of appellee to demand an indemnifying bond. The answer alleges that the property of the execution debtor that had been levied on was subsequently taken possession of and administered under certain bankruptcy proceedings instituted by the execution debtor. The evidence tends to show that on the day on which the goods had been advertised to sell under the execution, and after the constable had refused to make sale because an indemnifying bond that he would approve was not given, the constable re-advertised the goods for sale for another day under the execution. But this phase of the case was not fully developed in the evidence. It does not appear to what exact day these goods were re-advertised to sell, and on what exact day the bankruptcy proceedings were begun, and upon what day the goods were seized under the bankruptcy proceedings.

In this case the complaint makes sufficient allegations to prosecute an action under section 3286 of Kirby's Digest for the recovery against the constable and the sureties on his bond of the penalty prescribed by that section which is the amount specified in the execution, for the neglect or refusal of the officer to make sale of the property levied on under the execution. Or it makes sufficient allegations to support a common-law liability for actual damages caused by the officer and sustained by the plaintiff by reason of the negligence of the officer or his refusal to perform certain duties which, by the law, he was under obligation to perform for the plaintiff. *DeYampert* v. *Johnson,* 54 Ark. 165; 3 Freeman on Executions, § 368; 16 Ency. of Pleading & Practice, 244.

"The statute (sec. 3286, Kirby's Digest) is highly penal, and its terms should not be extended by construction to cases not within its plain meaning." *Hawkins* v. *Taylor,* 56 Ark. 45; *Moore* v. *Rooks,* 71 Ark. 562.

And so, if the evidence should show that the constable re-advertised the goods under the execution, which he retained, for

a day of sale within the life of the execution, and before such day the goods were taken and seized under bankruptcy proceedings instituted by the execution debtor, the defendants would not be liable for·the penalty prescribed by said statute. There would not in such event, under a strict construction of that statute, be such a neglect or refusal to make sale of the property under the execution as to penalize the defendants.

Because these matters have not been sufficiently developed on the former trial, we do not now pass thereon. Upon a further trial of this case, the exact nature of the cause of action and the evidence can be fully developed, so that the cause can be finally determined.

The judgment of the lower court is reversed, and the cause is remanded for a new trial.