## WILKERSON *v.* MOBLEY.

### Opinion delivered February 20, 1922.

1. EXECUTION—NON-RETURN—PENALTY.—A sheriff cannot be made liable to the statutory penalty for the non-return of an execution where such non-return was the result of the instruction or intermeddling of the plaintiff.

2. EXECUTION—NON-RETURN—PENALTY.—Where an execution plaintiff, a few days before the return day, directed the sheriff not to levy the execution, but to wait several months and get out a new execution, and the evidence showed that it was not contemplated that the execution should be returned within the time fixed by law, the statutory penalty will not be enforced against the sheriff for failure to return the execution on the return day or to get out a new execution.

Appeal from Clay Circuit Court, Western District; *R. H. Dudley,* Judge; affirmed.

#### STATEMENT OF FACTS.

This was a motion for summary judgment in the circuit court against the defendant, Polk Mobley, as sheriff of Clay County, and his sureties and E. C. Mathency as deputy sheriff, for a failure to make due return of an execution placed in the hands of said deputy in favor of Jas. Wilkerson against E. O. Michaels and others for $173.85 and the accrued interest, issued from the office of the Clay Circuit Clerk. The defense is that the return of the execution was prevented by the interference of the plaintiff, Wilkerson.

According to the evidence of the plaintiff the execution in question was issued on the 13th day of October, 1920, in the case of Jas. Wilkerson v. J. J. Johns, for the sum of $173.85 and the accrued interest. After the clerk of the circuit court had issued the execution, it was placed in the hands of E. C. Matheney, a deputy sheriff of Clay County. The deputy sheriff first levied the execution upon the horses of Jasper Sailes. It was found out that no judgment had been rendered against Sailes in the action because service of process had never been had against him. His horses were then released from the

execution. Jas. Wilkerson, G. W. Brown, one of the defendants, and E. C. Matheney, the deputy sheriff, held a meeting a few days before the sixty days from the date of the issuance of the execution had expired. It was agreed between Matheney and Wilkerson that the execution should be returned, and that Matheney was to get out another one to run sixty days from December 15, 1920. Brown told them that he had some cotton that he expected to sell about the middle of February, 1921, and that he would pay off the judgment with the proceeds. Wilkerson told Matheney to return the execution and get out another one, and Matheney agreed to do so. The execution was not returned. It was agreed between Wilkerson, Matheney and Brown that Matheney should not levy the execution, but that Wilkerson would give Brown until about the 15th day of February, 1921, to pay off the judgment.

The testimony of Jas. Wilkerson is as follows:

"I was the plaintiff in the execution issued against Michaels, Brown, Johns, and others. I ordered the clerk to issue the execution. A few days before the time for the execution to run out, Mr. Matheney and Geo. Brown, one of the defendants, came to me at Knobel to see if we could adjust the matter. Geo. Brown said that he could not pay the money then, but he believed that he could sell his cotton by the middle of February and be able to pay it off. Mr. Matheney said that he would have to levy that day, as the execution was about to expire. I agreed that Matheney could return the execution and get out another one that would expire about the 15th of February, 1921. Brown said he would pay for the execution, and Matheney said he would pay for it, and they could pay him later on. I came up here in March and found that he had not gotten out the second execution.

"I was willing to give the defendants further time, and I told Mr. Matheney not to levy the execution. I wanted him to return it. Matheney told me there that day that he would have to levy the execution while he

was there, as it would expire in a few days, and that something must be done about it at that time. I wanted to give the defendants further time, as I thought that they would pay it. Mr. Brown said he would pay it when he sold his cotton.''

E. C. Matheney testified as follows: ''I told Wilkerson that I was ready to levy on anything that he could show me. He said he could not find anything but what was under mortgage. Just a few days before the execution was to expire, I went to Knobel, got Sailes, Brown and Wilkerson together back of Charley Cox's barber shop in Knobel, and told them something had to be done. Wilkerson told me not to make any levy, as Geo. Brown thought he could pay it by the 15th of February, 1921. I agreed that I would get out a new execution at my own expense and bring it down there and levy; then I made a return on this execution, placed it in my office so that I could have the information to go and get another one just like it. Mr. Wilkerson, when I first went to him, told me that some had been paid on the judgment, but that he did not know how much. The execution was for a larger amount than was due on the judgment.

''The reason that I did not return the execution was that I had it there so that I could see what case it was when they wanted an execution. If I had levied this execution, I could not have told from the execution what was the proper amount to levy for.''

Austin Jett testified for the defendant as follows: ''I heard the conversation between Mr. Matheney and Mr. Wilkerson and George Brown at Knobel behind Cox's barber shop, in the early part of December, 1920. Mr. Brown said he had some cotton, and that, if Mr. Wilkerson would wait until about the middle of February, 1921. Mr. Wilkerson then told Mr. Matheney not to make the levy. Mr. Matheney told him that he would have to do something with the execution that day. He said the execution would expire in a few days.''

The court found that the failure of the sheriff to return the execution was due to the instructions of the plaintiff, and it was adjudged that the plaintiff take nothing by his suit. To reverse that judgment the plaintiff has duly prosecuted this appeal.

*J. N. Moore,* for appellant.

The clerk who issued the execution testified that same had never been returned. This made out a *prima facie* case and appellees should have been held liable under sec. 6256, C. & M. Digest. See 56 Ark. 45.

The only conduct on the part of the appellant which would excuse the sheriff from liability for not making return of the execution would be for him to waive or ratify such action by the sheriff. 47 Ark. 373; 22 Ark. 524; 118 Ark. 271. A consent to the return of the execution without levy on the part of the appellant did not amount to a waiver of the requirement that the sheriff make due return thereof.

*F. G. Taylor* and *C. T. Bloodworth,* for appellee.

The instructions and conduct of the appellant caused the failure to make return of the writ, and appellant cannot now take advantage of the omission. 74 Ark. 413; 47 Ark. 373.

HART, J. (after stating the facts.) It is well settled in this State that a sheriff should not be made liable under the statute for the non-return of an execution, when the failure to do so has been the result of the instruction or intermeddling of the plaintiff. The reason is that, where the failure of the sheriff to make the return is caused by the plaintiff himself, he ought not to be permitted to obtain any advantage by it.

The statute in question is highly penal, and a party invoking it must bring himself within both the letter and spirit of it. Therefore, he can do nothing which directly or indirectly contributes to the omission of the duty complained of and still hold the sheriff answerable under the statute. *Bickham* v. *Kosminsky,* 74 Ark. 413. The proof

in this case shows that a few days before the return day of the writ the deputy sheriff who had in his hands the execution told the plaintiff, in the presence of the execution debtor, that he was ready to levy on any property belonging to the defendant that could be shown him, but that something had to be done because the time for the return of the execution would expire in a few days. This was in the early part of December. The plaintiff Wilkerson then agreed with the defendant Brown not to have any execution levied on his property until about the 15th day of February, 1921, at which time Brown thought he could pay off the judgment by the sale of his cotton.

It is true that the plaintiff himself testified that the execution then in the hands of the sheriff was to be returned and another one issued at the expense of the deputy sheriff, or of Brown, but he does not state, however, that it was to be returned within the sixty days. Indeed, it is inferable from the testimony, read as a whole, that it was not in the contemplation of the parties that the execution should be returned within sixty days from the date of its issuance. It will be noted that the deputy sheriff was complaining that the sixty days would soon be out, and that he must do something with the execution. It was then agreed that the execution should not be levied on the property of Brown, but that Brown would be given until the 15th of February, 1921, before an execution should be levied upon his property. The court might have found that this was tantamount to an agreement by the plaintiff that the deputy sheriff should return the execution then in his hands at his convenience and sue out another if Brown did not make the payment by the 15th of February, 1921, as he had promised.

But it is claimed that the deputy sheriff did not carry out his promise of having another execution issued in the case. That is not the issue in the present case. This is a motion for summary judgment under the statute against the sheriff for failing to return an exe-

cution. The court found, as we have just seen, that the deputy sheriff would have returned the execution within the sixty days if the plaintiff had not told him, in effect, to let everything rest until the 15th of February, 1921.

It has been well said that the plaintiff can not first disarm the sheriff and then hold him liable for not returning the writ.

It follows that the judgment must be affirmed.