McILROY BANKING COMPANY *v.* MILLS.

Opinion delivered December 17, 1928.

742

John Mayes, for appellant.

J. S. Combs and J. B. Harris, for appellee.

McHANEY, J. Appellant secured a judgment against Boyd & Phipps, in the Madison Chancery Court, on October 25, 1924, in the sum of $700 and interest. It did nothing to collect said judgment until July 7, 1927, when it caused an execution to be issued by the clerk of said court and delivered to the sheriff, who promptly went to the vicinity of the residence of the judgment debtors and made inquiry as to what property, if any, they owned, and was advised that they did not own anything of value. One of them had become a nonresident of the State. On July 9 the sheriff returned the execution to the clerk, indorsed that he had served the writ but found no property, real or personal, out of which to collect the debt, which was in fact a true return as conditions then existed. As a matter of fact, Boyd & Phipps were the owners of certain lands in that county at the time said judgment was rendered, but which they had sold and conveyed to the appellee, Mills, on May 20, 1925, at a time when the lien of said judgment was an incumbrance thereon.

On September 27, 1927, appellee, John A. Phillips, the sheriff, wrote appellant he had examined the records and found that Boyd & Phipps had sold the land to Mills after the bank's judgment, and that he would advertise and sell the land as soon as he could give notice to the parties. An alias execution was issued by the clerk on November 16, and the sheriff made a levy on the land and advertised it for sale. Mills then brought this action to enjoin the sale, setting up his title, and that the lien of appellant's judgment had expired on October 25, 1927. Appellant filed an answer and cross-complaint, making

the sheriff, Phillips, and his bondsmen parties defendant, and prayed judgment against them for the failure, refusal and neglect of the sheriff to promptly levy the execution of July 7 on said land. It was charged that the failure of said officer to levy said execution was willful and with the intent to let the lien of the judgment expire as a result of a conspiracy with said Mills, and to prevent appellant from collecting its debt.

The court found that Mills purchased said land for a valuable consideration, in good faith, and without actual notice of said judgment, and permanently enjoined the sale thereof under the levy made in November. On the cross-complaint the court further found that the sheriff had used due diligence, was guilty of no negligence in the matter, and that appellant had given no directions to the sheriff as to what property to levy on, and that, after it discovered that a sale of land had been made by the judgment debtors after said judgment was rendered, it neglected to cause an alias execution to issue before the lien of its judgment expired. The court therefore dismissed the cross-complaint for want of equity.

This action against the sheriff is based on § 4360, C. & M. Digest, which reads as follows:

"If any officer to whom any execution shall be delivered shall neglect or refuse to execute or levy the same according to law, or shall take in execution any property, or if any property be delivered to him by any person against whom an execution may have been issued, and such officer shall neglect or refuse to make sale of the property so taken or delivered according to law, or if any such officer shall not return any such execution on or before the return day therein specified, or shall make a false return thereof, then, and in any of the cases aforesaid, each officer shall be liable and bound to pay the whole amount of money in such execution specified, or thereon indorsed and directed to be levied; and it shall be the duty of the clerk of the court from which any execution may be issued to indorse thereon the time when such execution was returned."

It has been held by this court that this section is highly penal. *Mayfield Woolen Mills* v. *Lewis*, 89 Ark. 488, 117 S. W. 558, and the same case, 97 Ark. 149, 133 S. W. 590.

In *Wilkerson* v. *Mobley*, 152 Ark. 124, 237 S. W. 726, it was said: ''The statute in question is highly penal, and a party invoking it must bring himself within both the letter and spirit of it. Therefore he can do nothing which directly or indirectly contributed to the omission of the duty complained of and still hold the sheriff answerable under the statute.'' Citing *Bickham* v. *Kosminsky*, 74 Ark. 413, 86 S. W. 292, 4 Ann. Cas. 978.

As was said by the Supreme Court of Alabama, in *Governor* v. *Campbell*, 17 Ala. 566:

''It is the duty of a sheriff to use due diligence in the execution of process, whether final or mesne. If he does this, he discharges his duty, and cannot be held liable, although he has failed to execute the writ. Thus, if a defendant in execution be not in the possession of any property, and the sheriff has no knowledge that he has any, nor by ordinary diligence can ascertain that he has, and none is pointed out or shown to him as the property of the defendant, if he returns the writ no property, under such circumstances he could not be liable, although it might afterwards appear that the defendant had property liable to be sold under the writ. To hold the rule otherwise would be to hold the sheriff liable at all events, if the defendant had property, although the sheriff could not ascertain the fact or find the property.''

We think this is undoubtedly the correct rule to be applied to sheriffs and other officers who receive process for execution. The undisputed facts in this case show that neither Boyd nor Phipps owned or had in their possession any of the real estate on which it is claimed the execution could have been levied at the time it was delivered to the sheriff. They had, more than two years prior thereto, sold and conveyed to appellee Mills, who had it in his possession, and, at the time the sheriff made the *nulla bona* return of the execution of July 7, neither

of them were in possession of any property out of which the sheriff might have collected the debt. Testimony on behalf of appellant tended to show that the sheriff was directed to levy on this land, although the witness who testified in this regard was not positive, direct and certain that he did so instruct the sheriff. On the other hand, the sheriff testified positively that he had no information that Boyd & Phipps had ever owned this land, or that they had conveyed it to Mills subsequent to the judgment against them. It was not the duty of the sheriff to run the records to ascertain what property, if any, the judgment debtors owned, or whether they had conveyed any property subsequent to the date of the judgment. At the date of the writing of the letter by the sheriff to the bank, hereinbefore mentioned, the execution had already been returned, and the sixty days within which the sheriff had to make a levy and return the execution had expired. About that time appellant had caused another person to examine the records, and at that time found out that Boyd & Phipps had owned this land and had conveyed it to Mills subsequent to the date of the judgment. It then became the duty of appellant to cause an alias execution to issue, with specific directions to the sheriff to levy on the land in the possession of Mills. The land being in the possession of another than the judgment creditor, the sheriff might reasonably have required the appellant to give an indemnifying bond to protect him in case of illegal levy. We are therefore of the opinion that the failure of appellant to collect its judgment was due primarily to its own negligence in failing to direct the sheriff to levy on the particular land, and to cause an alias execution to issue for such purpose.

As said by this court in *Wilkerson* v. *Mobley, supra*: "The reason is that, where the failure of the sheriff to make the return is caused by the plaintiff himself, he ought not to be permitted to obtain any advantage by it." And that "he can do nothing which directly or indirectly contributes to the omission of the duty complained of and still hold the sheriff answerable under the statute."

746

We are therefore of the opinion that the decision of the chancellor is supported by the preponderance of the evidence; at least we cannot say that it is against the preponderance of the evidence. The decree is accordingly affirmed.