The Honorable John Lowery State Representative Post Office Box 2168 El Dorado, AR 71731-2168 Dear Representative Lowery:
I am writing in response to your request for my opinion on the following questions:
 1. Do the provisions of A.C.A. § 21-2-701 et seq.
relieve sheriffs and county officials from having to obtain bonds as required under A.C.A. 14-14-1201?
 2. If so, short of a writ of mandamus, what recovery options does a citizen possess when a sheriff fails to properly execute his legal duties?
As factual background, you have attached correspondence from a law firm that registered in Lonoke County a judgment and a writ of execution issued in Union County. The Lonoke County Sheriff reportedly failed to execute on the judgment, prompting the law firm to request the name of the surety bond company that it assumed had issued surety bonds on county employees pursuant to A.C.A. § 14-14-1201. The county attorney reportedly informed the law firm that the county was released from the referenced bonding requirement by virtue of the county's participation in the Self-Insured Fidelity Bond Program, which is authorized by A.C.A. § 21-2-701 et seq. The law firm believes that A.C.A. § 14-14-1201
"protects citizens for claims against county Officials and Sheriff's [sic] if they have been wronged in some way by their actions," whereas the latter subchapter is designed only "to protect government entities, namely a County if a clerk in one of *Page 2 
their courts is caught pilfering money." Given this perceived divergence in coverage, you have asked whether a county's participation in the Self-Insured Fidelity Bond Program indeed relieves the county of any other bonding requirement.
RESPONSE
In my opinion, the answer to your first question is "yes." I need not address the law firm's suggestion that A.C.A. § 14-14-1201 might afford a private individual an avenue of monetary relief from a surety bond company that had bonded a public official. I consider this question moot because, in enacting A.C.A. § 21-2-701 et seq., the legislature unequivocally declared that participation in the Self-Insured Fidelity Bond Program would be in lieu of any otherwise applicable bonding requirements. The Self-Insured Fidelity Bond Program secures only participating governmental entities against the fraudulent and dishonest acts of their officers and employees and does not create a potential cause of action for citizen plaintiffs.[1] With respect to your second question, A.C.A. §§ 16-65-202 and -118 expressly authorize an aggrieved judgment creditor to proceed against the sheriff or his surety for failure to levy an execution.
Question 1: Do the provisions of A.C.A. § 21-2-701 et seq. relievesheriffs and county officials from having to obtain bonds as requiredunder A.C.A. 14-14-1201?
As noted above, I believe the answer to this question is "yes."
Subsection 14-14-1201(a) of the Arkansas Code (Repl. 1998), enacted pursuant to Acts 1977, No. 742, § 113, provides that "[a]ll elected or appointed county and township officers and employees thereof, who receipt for cash funds or disburse public funds of a county by virtue of their office or employment shall obtain a surety bond." The scope of coverage of such bonds is set forth in A.C.A. § 14-14-1201(d), which provides:
 Conditions of Sureties. The condition of every official bond must be that the covered officers and employees shall perform all official duties required of them by law and also such additional duties as *Page 3 
may be imposed on them by any law subsequently enacted, and that they will account for and pay over and deliver to the person or officer entitled to receive the same all moneys or other property that may come into their hands as such officers or employees. The sureties upon any official bond are also in all cases liable for the neglect, default, or misconduct in office of any deputy, clerk, or employee, appointed or employed by an officer or employee of county government.
Subsection (e) of this statute further provides in pertinent part:
 Purchase of Bonds. The county judge of each county shall purchase all surety bonds for county and township officers, and employees thereof, in the amounts fixed by ordinance of the county quorum court pursuant to the purchasing laws governing county government. A bond may cover an individual officer or employee, or a blanket bond may cover all officers and employees, or any group or combination of officers and employees.
Despite the fact that various blanket bond programs formerly authorized and codified in subchapters 2 through 6 of title 21, chapter 2 were repealed pursuant to Acts 1991, No. 188, § 3, the reference to blanket bonds in A.C.A. § 14-14-1201(e) remains part of the Code.
Subchapter 7 of title 21, chapter 2 of the Code (Repl. 2004 Supp. 2007), initially enacted pursuant to Acts 1987, No. 728, authorizes the Self-Insured Fidelity Bond Program, whose purpose is set forth as follows in A.C.A. § 21-2-701:
It is found and determined that:
 (1) The State of Arkansas and the counties, municipalities, and school districts of the State of Arkansas are expending large sums of money each year for premiums on blanket bonds for officers and employees;
 (2) Considerable savings might be effected by the establishment of a self-insured fidelity bond program for state officials and employees, *Page 4 
county officials and employees, municipal officials and employees, and school district officials and employees;
 (3) This subchapter is designed to establish a governmental bonding board to develop a self-insured fidelity bond program for those officials and employees; and
 (4) This subchapter is designed to provide that self-insured fidelity bonds would be in lieu of the various blanket bonds which are presently required under this chapter for various officials and employees and to thereby effectuate substantial savings in the cost of blanket bonds for those officials and employees.
(Emphasis added.)
The reference in the highlighted passage to "various blanket bonds which are presently required" may be of questionable relevance in light ofAct 188 of 1991, which, as noted above, repealed various subchapters of the Code providing for such bonds. These repealed laws are described in the title to Act 188 as being "obsolete" — a characterization that suggests that the legislature intended the Self-Insured Fidelity Bond Program to supplant the various blanket bond programs.
Section 21-2-703 further provides:
 (a)(1) The fidelity bond coverage provided under this subchapter shall be in lieu of all statutorily required bonds for the various public officers, officials, and employees participating in the Self-Insured Fidelity Bond Program.
 (2) The various laws specifically requiring surety bonds or blanket bonds for the respective public officials, officers, and employees shall not be applicable so long as the fidelity bonds as provided in this subchapter are in effect covering the officials, officers, and employees.
 (b) In the event coverage shall cease to be provided for any or all of the officials, officers, or employees pursuant to this subchapter, the laws currently in effect providing for surety bonds or blanket bonds *Page 5 
shall again become applicable to the officials, officers, and employees.
(Emphasis added.) Subsections (a)(1) and (a)(2) of this statute bluntly declare that a self-insured fidelity bond will be a sufficient substitute for any other "statutorily required bonds." I gather from your factual recitation that only a self-insured fidelity bond is at issue in your request.
The legislative history recited above suggests that the legislature in 1977 first authorized blanket bonds as an alternative to individual bonds, then in 1987 authorized the Self-Insured Fidelity Bond Program, which it conceived as a more favorable alternative to blanket bonds, and then in 1991 repealed much of the legislation authorizing blanket bonds — although, as noted above, the references to blanket bonds in A.C.A. § 14-14-1201(d) and A.C.A. § 21-2-701 remain. This legislative history further suggests that a particular officer need be covered only under one variety of bond and that the scope of coverage might exclude negligence.
Specifically with respect to your question, the highlighted passages above should be dispositive in that they clearly state that an individual covered by a self-insured fidelity bond need not be covered by any other variety of bond. See Ark. Op. Att'y Gen. No. 200-160 (opining that the issuance of a "Blanket Dishonesty Bond" by the Arkansas Fidelity Bond Trust Fund in all likelihood relieves Arkansas Development Finance Authority board members of the obligation to purchase individual fidelity bonds pursuant to A.C.A. § 15-5-206, which has since been repealed).
Question 2: If so, short of a writ of mandamus, what recovery optionsdoes a citizen possess when a sheriff fails to properly execute hislegal duties?
Before generally addressing this question, I must note that I am statutorily barred from engaging in the private practice of law. A.C.A. § 25-16-701. Although I can point to various potentially applicable statutes that might bear on your question, this opinion is not provided for the benefit of private third parties and should not be relied upon for that purpose.
In my opinion, if a sheriff is bonded only under the Self-Insured Fidelity Bond Program, the potential remedies for nonfeasance on his part are either through a *Page 6 
writ of mandamus, an action for willful nonfeasance pursuant to A.C.A. § 16-65-202 or an action for default in execution pursuant to A.C.A. § 16-66-118.
Implicit in your question is what I consider an accurate recognition that a citizen could not realize a monetary recovery under the Self-Insured Fidelity Bond Program. The scope of coverage of a self-insured fidelity bond is set forth as follows in A.C.A. § 21-2-704(b)(1):
 The fidelity bond coverage provided by the program shall cover actual losses sustained by a participating governmental entity through any fraudulent or dishonest act or acts committed by any official or employee of the participating governmental entity
acting alone or in collusion with another, during the bond period to an amount not exceeding the lesser of three hundred thousand dollars ($300,000) or the amount of the bond.
(Emphasis added.) As reflected in the highlighted phrases in this statute, a self-insured fidelity bond secures only a governmental entity from the fraudulent or dishonest acts of its officials or employees.See Volunteer Council v. Government Bonding Board, 319 Ark. 716, 720,894 S.W.2d 580 (1995) ("[T]he Fidelity Bond Program is designed to cover losses sustained by participating governmental entities."). It is not an instrument that affords private citizens access to remuneration for official misconduct, whether through negligence, nonfeasance, fraud or dishonesty.
The question remains whether an aggrieved citizen might directly sue the sheriff for alleged nonfeasance of the sort described in your request. This issue is addressed in A.C.A. § 16-65-202, which provides in pertinent part.
 (a)(1) Judgment shall be rendered summarily against the persons and their securities and for the defaults stated in subsections (b)-(d) of this section.
 (2) The motion may be made by the party aggrieved or his or her legal representatives against the person in default and his or her securities upon his or her official bond. *Page 7 
 (3) Judgment shall be rendered against such of the parties, whether principal or surety, as may have received notice of the intended motion.
 (b) Judgments shall be rendered for the plaintiff's in the following cases against the sheriff, coroner, or constable receiving or executing the writ:
 (1) For willfully failing to return an execution, the amount of the judgment on which it was issued, including all the costs and ten percent (10%) thereon[.]
(Emphases added.) If a judgment is entered in one county and an execution upon that judgment is issued to the sheriff of another county — the factual situation recited in your request — a motion for summary judgment against the sheriff may be filed in the county where the judgment was entered. Atkinson v. Means, 252 Ark. 8, 477 S.W.2d 178 (1972).
Two additional features of this statute bear discussion. First, the referenced cause of action against a surety cannot apply in a county participating in the Self-Insured Fidelity Bond Program, which secures only participating governmental entities against the fraudulent and dishonest acts of their officers and employees. Any action by a private individual pursuant to A.C.A. § 16-65-202 would consequently lie only against the sheriff himself. Secondly, the statute as amended by Acts2003, No. 1151, § 1 imposes a mental state of willfulness in failing to levy the execution. Only a finder of fact could determine whether this mental state existed in any particular case.
Also potentially applicable is A.C.A. § 16-66-118 (Repl. 2005), which provides in pertinent part:
 (a) Each officer to whom any execution is delivered shall be liable and bound to pay the whole amount of money specified in or endorsed on the execution and directed to be levied if he or she:
 (1) Neglects or refuses to execute or levy the execution according to law[.] *Page 8 
 * * * (c) If the officer, on the return of any execution or at the time the execution ought to be returned, does not have the money which he or she may have become liable to pay as prescribed in subsection (a) of this section and does not pay the money over according to the command of the writ, any person aggrieved thereby may have his or her action against the officer and his or her securities, upon his or her official bond.
 (d) If any officer sells any property under any execution, whether he or she received payment therefor or not, or makes the money specified in or endorsed on any execution and directed to be levied, or any part thereof, and does not have the amount of such sales or the money so made before the court and does not pay over the same according to law, he or she shall be liable to pay the whole amount of the sale or money by him or her made to the person entitled thereto, with lawful interest thereon, and damages in addition at the rate of ten percent (10%) per month to be computed from the time when the execution is made returnable until the whole is paid, to be recovered in an action against the officer and his securities on his or her official bond.
 (e)(1) The party aggrieved may proceed against the officer by the motion before the court in which the writ is returnable in a summary manner, ten (10) days' previous notice of the intended motion being given, on which motion the court shall render judgment for the amount which ought to have been paid, with interest and damages as provided in subsection (d) of this section, and award execution thereon.
To the extent that this statute might be read as subjecting a sheriff to personal liability for mere negligence in failing to levy an execution, it should in all likelihood be deemed superseded by A.C.A. § 16-65-202, which by 2003 amendment clearly declared that any such nonfeasance must be willful in order to subject a sheriff to personal liability. Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith,268 Ark. 157, 594 S.W.2d 238 (1980). In accordance with this *Page 9 
principle, I believe the mental state mandated in A.C.A. § 16-65-202 is a required element to support imposing personal liability upon a sheriff who has failed to levy upon an execution within the prescribed time period. I will further note that the Arkansas Supreme Court has characterized A.C.A. § 16-66-118 as being highly penal in nature and enforceable only when a sheriff knew or by ordinary diligence could have ascertained the existence of property subject to execution. McIlroyBanking Co. v. Mills, 178 Ark. 741, 11 S.W.2d 481 (1928).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] It would appear to follow that participating entities no longer need to provide surety coverage against the negligent acts of officers and employees. *Page 1