EUREKA STONE COMPANY *v.* KNIGHT.

Opinion delivered March 18, 1907.

BILL OF EXCEPTIONS—FILING.—A bill of exceptions is filed within the meaning of Kirby's Digest. § 6225, 'when it is delivered within due time to the clerk to be filed, though he delays placing his file mark upon it until a later date.

Appeal from Carroll Circuit Court, Western District; *J. S. Maples,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an action by appellee against appellant to recover damages for alleged breach.of contract. It is alleged in the complaint that appellant for a specified sum to be paid by appellee agreed to furnish appellee stone for a building to be erected at Mena, Arkansas. ·It is alleged that appellant agreed to cut the stone according to *details of the architect of the building and to deliver same at Mena ready for use.* It is alleged that appellee furnished appellant with the details of the architect, and paid for the stone the sum agreed upon. That appellant failed and refused to furnish some of the stone "necessary for the building," and that part of the stone furnished was not cut according to the details of the architect. That appellee was damaged by reason of appellant's failure to furnish stone according to contract in the aggregate sum of $615.05, for which appellee prayed judgment.

Appellant admitted the contract to furnish stone to appellee and to cut same according to details of the architect of the building, and to deliver same at Mena ready for use. It admitted that the details of the architect were furnished, and it alleged that it cut the stone according to these details, and admitted that it received the price for same agreed upon. It denied other allegations of the complaint, and alleged that if appellee sustained any loss or damage it was by reason of his own fault or incapacity; and not on account of any failure of appellant to comply with its contract which appellant alleged it fulfilled in every particular.

The appellee testified: "I have had contract to build for bank of Mena brick building with stone trimmings; contract

with appellant to furnish stone. The architect furnished plans, specifications and blue prints for the building, and I constructed building according to them. The stone for trimmings was furnished by appellant. It was to be furnished ready to be placed in building. Most of the stone received fit where it belonged, but some would not fit where it belonged, nor in any other place. In front of building was a large entrance door and large window; arch over each was formed of stone furnished by appellant; neither of these arches would fit. The crooked stone which extended from door to window and started arches was too short, and it had to be spliced; was too many rock for arch of window, and could not all be got into the arch without destroying the circumference. I had all the stone of these arches recut at considerable cost. The arch over the main entrance would not fit, and had this stone recut. The crooked rock, which was too short, could not be used. I got a new rock, and had it cut myself. Other stone did not fit. I wrote appellant to send me new rock, but it would not fit. I cut out a pattern and sent to them, and appellant cut rock by the pattern, and then it fit. I could not work up some of the rock of which I complained, and appellant sent me two rough stones which I had cut and used. I paid for the freight on these stones and for cutting. Appellant failed to send me enough cope stone. There was sixteen feet shortage, worth $8. I had to get enough stone out of scraps to finish. The stone cutting, freight and extra stone which I paid for cost $107.05. Having to wait for stone and trouble of having same trimmed delayed me in getting building done within time, and damaged me $500. I paid appellant for the stone. I had the plan of the building showing the different stones appellant was to furnish, each designated by number. I do not know who furnished these plans, but suppose it was the architect. When I wrote appellant that certain stone was wrong, I would identify what stone was wrong by giving number and letter. The plans showed the distance between each window, and I think the bank was built with distance between windows that the architect's plans showed. I did not measure between each window to see that the distances were the same as the architect's plan called for, but think they were the same, because I helped put in the window frames before the brick was

laid between the window, and I put the frames in the right distance apart. These frames were well placed, and should have remained in plumb. One of the windows did get loose, but I think it was set in the wall all right. I furnished material for the building; had no trouble except with the stone. The window frames and casings fit; so did everything except a small portion of the stone. The stone was promptly delivered except the part that did not fit. I was delayed some in getting stone that would fit, but after all the stone was furnished and the stone work completed I was from other causes delayed several months on the building. One cause was I could not get glass to close up the building. I think the building substantially conformed to the architect's plan. Probably one place, the pier between front entrance and first window at side, was from one-half to an inch wider, but the mortar filled it and the variation at that place of one-half to an inch would make no difference with the fitting of the stone above. I do not know whether appellant cut the stone according to its stone sheet. I know that some of it was not cut according to the plan furnished me. It would not fit in its place."

The architect testified in substance as follows:

"I prepared the plans and specifications. The plans are blue prints, and these before me are copies of part of them at least. The different sheets show the different elevations of the bank building and the various dimensions of its several parts. These drawings were intended to show the workmen the dimensions of all work to be put in, that is the details of their work. Where the details were too small to show on the entire elevation, a special detailed drawing like that of the tower was made. These blue prints show the exact distance between and the width of all doors and windows, but do not show the dimensions of the cut stone that was to be used in the building. It is customary to furnish details of such dimensions to the stone cutters and I did so in this case. This plan is the details of the stone work, and shows the size of each stone and the angle of same. I do not know whether it was made by me or appellant. It was brought to me by Mr. Chenowith of the appellant company for me to verify and O. K. Some of the writing on it is mine; so are the indicated dimensions. As I remember, this sheet was

intended to show the dimensions of all the stones; but some of them could not be ascertained by appellant, and the sheet was sent to me to verify and to fill out the dimensions that were not known by it, which I did, and it was the stone sheet or working plans of the building for appellant and a part of the plans and specifications, and was appellant's guide to cut stone by. My word was law in the construction. The stone and other material ought to be prepared according to my directions. I was at Mena to examine the work as it progressed frequently; usually once a week, sometimes once in two weeks, sometimes twice a week. I think the building was completed according to my plans and specifications. Appellee's work was not of the best, but for the most part filled the required plans. Some of the brick work was defective, and I ordered it taken out, I think, in two places. I do not remember whether this was caused by mortar freezing or not. I did not take measurements of the parts of the building as it went up to see if it compared with the plans. I think I could tell that by inspection without measurements. I frequently told appellee that building would have to comply with plans, and I presume it did. Appellee told me that some of the cut stone did not fit. The stone in arch over window was too full and over the door too scant. The keystone of latter was all right, but the other stones did not fill up the space from the spring to the keystone. The spring is the point at which the perpendicular stops and the curve of the arch commences. If stone is cut for a given level arch, and the spring of one side is higher than the other, it will throw the arch out of shape, and the stone for it will not fit. If the spring for one side is lower, the stone intended for it would not fit. If an arch is intended to be of a given width, and the opening is made narrower than it was intended, the stone would not fit. There would be too many stones in the arch, and *vice versa.* Appellee told me that he had some of the stone recut because it would not fit. I think the window arch was of the proper width according to the plans, but I do not know; I never measured its width. If the opening was narrower than shown by the plans, an arch cut for it would not fit. At front entrance the arch started upon two marble pillars, instead of brick piers as all other did. From the tops of the piers a skewback, which has been called a crooked stone,

extended along the abutting pier over to the next opening, and a skewback upon each side of the door extended from the pillar on the one side to the adjoining window, and the right hand side of the front door and arch of front window each start from the same skewback, and left hand side of the front door and arch over first window at side started from a common skewback. The tops of the pillars and "square" (piers) of front window and first side window should all be on an exact level. The marble pillars were not furnished by appellant, but by a Tennessee dealer. They were not correct as to length. We had to cut one of them off, and then after it was set up the right one was found to be higher than the corresponding one on the other side. I do not think this variation would cause trouble in arches or cause them not to fit. The stone sheet that appellant worked by was his guide, and no changes in dimensions thereon could be made without authority from me. I never gave such authority. The apellant was required only to cut the stone so it would conform to the requirements of the drawing and specifications I gave him, and which is the one in evidence, and which it calls its stone sheet."

The appellant adduced evidence tending to prove that it had cut the stone called for by the contract with appellee according to the details of the architect. Appellant's proof tended to show that it had not breached its contract with appellee, but, on the contrary, that the reason the stone as cut by it did not fit was because appellee had failed to construct the building according to the plans and specifications furnished by the architect.

The court granted the following prayers for instructions at the request of appellee:

"1. I charge you that if you find from the evidence that the defendant company agreed and contracted with the plaintiff to furnish him stone, to be used in the erection of the First National Bank Building at Mena, cut and ready to set in the building according to the plans and specifications as made by the architect, and it failed in that particular as shown by a preponderance of the evidence, then you will be authorized to find for plaintiff upon that issue.

"2. If you find from a preponderance of the evidence that the defendant company failed to furnish the plaintiff stone properly cut ready to be set according to the plans and specifica-

tions from which the building was erected and from which the company made its bid and contracted with the plaintiff, then the plaintiff would have the right either to accept or reject said stone so improperly cut; and if he accepted, and in order to use the stone was obliged to have the same recut, then the plaintiff would have the right to recover from the defendant company his expenses so expended in having said stone recut in order to use the same in the building he was erecting.

"3. I charge you if you find from a preponderance of the evidence that the defendant company failed to furnish sufficient amount of coping to the plaintiff, then he would be permitted to recover upon that claim as to the amount that coping was reasonably worth.

"4. If you find from the evidence that the defendant failed to pay the freight upon any of the stone it agreed to pay under its contract with plaintiff, and plaintiff paid said freight, then the plaintiff would be entitled to recover upon that issue.

"5. I charge you that if you find from a preponderance of the evidence that the defendant failed to furnish the plaintiff with stone properly cut ready for use to be set in the building according to the plans and specifications of the architect, and the plaintiff was thereby delayed in the erection and construction of said building and damaged thereby, then you will be authorized to find for the plaintiff upon that issue in such a sum as you will feel warranted from the evidence in the case."

Prayers for instructions by appellant were refused, but appellant does not urge in its brief any error of the court in this ruling. Hence we do not set them out.

The jury returned a verdict in favor of appellee for $250. Motion for new trial was overruled. Judgment was entered for the amount of the verdict. Appellant was given ninety days to file bill of exceptions. It filed on May 4, 1906, in the office of the circuit clerk, a paper which purported to be a bill of exceptions, but which had not then been signed by the presiding judge. On the 8th day of May, 1906, this paper was tendered to the trial judge, and he signed same and ordered it to be made a part of the record. This signing by the judge was within the time given for filing bill of exceptions. The paper remained in the circuit clerk's office, and on July 10, 1906, was by the

circuit clerk indorsed on the outside cover "Filed," signing his name as clerk.

*W. F. Pace* and *Troy Pace,* for appellant.

1.  The first instruction is a usurpation of the functions of the jury in assuming that the preponderance of the evidence shows that the defendant failed to perform his contract.  71 Ark. 43; 58 Ark. 504.  The second and fifth instructions were misleading, and there is no allegation in the complaint nor any evidence upon which to base the third.

2.  The evidence does not sustain the verdict.

*James & Fuller* and *Hal L. Norwood,* for appellee.

1.  The bill of exceptions was not filed in time.  It did not become a bill of exceptions until signed by the trial judge.  34 Ark. 627; 37 Ark. 528.  A bill of exceptions is only made when it has been allowed and signed by the judge, and filed by the clerk.  46 Ark. 485.  The act of filing by the clerk prior to the signature by the judge was a nullity; and after the signature by the judge the filing by the clerk on July 10th was out of time. 35 Ark. 395; *Id.* 388; 53 Ark. 415; 58 Ark. 110; 52 Ark. 554.

2.  If there was any error in the court's first instruction, which is not conceded, it was cured by the giving of the first, second and third instructions requested by defendant.  Moreover, if there was error therein, no injury resulted to appellant, and harmless error is no ground for reversal.  46 Ark. 485.

Appellant's exceptions to the court's instructions, being general, can not avail.  57 Ark. 153; 54 Ark. 16; 59 Ark. 312; 60 Ark. 250; 59 Ark. 250.

WOOD, J., (after stating the facts.)  First.  Appellee contends that there is no bill of exceptions.  The purported bill of exceptions was filed by the circuit clerk May 4, 1906.  At this time it was not a bill of exceptions because it had not been signed by the presiding judge.  But the bill was signed on the 8th by the judge before the time given had expired, and it was left with the circuit clerk.  It was not taken from the clerk's office. On the 10th day of July it was indorsed by the clerk "Filed." But the paper became a part of the record in the cause when it was signed by the presiding judge within the time allowed and was within that time left or deposited with the circuit clerk to

be made a part of the record. The paper was "filed" on the day
it was so left or deposited with the clerk. That act constituted
the filing, and it was the duty of the clerk to mark it filed as
of that day. The fact that he did not do so until long after did
not invalidate the previous filing. A paper is "filed" when
delivered to the proper officer and by him received to be kept
on file. And. Law. Dict. 459, bottom page; *Naylor* v. *Moody,*
2 Blackf. (Ind.) 247; 19 Cyc. 529, 530; *Peterson* v. *Taylor,* 15
Ga. 483; *Powers* v. *State,* 87 Ind. 144-148; *Bettison* v. *Budd,*
21 Ark. 578; *Grubbs* v. *Cones,* 57 Mo. 83. The indorsement by
the clerk is the highest legal evidence of the filing, yet the filing,
in contemplation of law, is as perfect before as after such indorse-
ment, and dates from the receipt by the clerk and its lodgment in
his office.

Second. The instructions and a full statement of the essen-
tial facts in evidence are set forth in the statement of facts.
Appellant contends that the instructions given at the instance of
appellee are erroneous, and that the evidence does not sustain
the verdict. The first instruction does not invade the province
of the jury as appellant contends. It is hypothetical, and leaves
the jury to determine whether the facts are established by a
preponderance of the evidence. The second instruction does not
submit matters without the issue, as appellant insists. In the
light of the evidence the jury were not warranted in finding that
the building was erected according to different plans and specifi-
cations from those by which the stone was cut. The details by
which the stone was cut, and those by which the building was
constructed as to stone work, under the evidence, were the same,
These were furnished by the architect, and the only question was
whether or not the appellant had followed these details in cutting
and furnishing the stone according to contract. The second
instruction could not have misled the jury. The second, third,
fourth and fifth instructions submitted to the jury the question
of whether or not the appellee was damaged in certain particulars.
None of these instructions were abstract, and, taken as a whole,
the law was correctly declared and fairly submitted the issues of
fact for the determination of the jury. While the instructions
were not in good form, and not to be approved as precedents, no
specific objection was made calling attention of the trial court

to the particular matters urged here for reversal. In the absence of such objection, we do not think there was any prejudicial error in giving the instructions in the form presented. The verdict was sustained by the evidence.

The judgment is therefore affirmed.