DUNFORD v. DARDANELLE & RUSSELLVILLE RAILROAD COMPANY.

Opinion delivered October 25, 1926.

1. VENDOR AND PURCHASER—POSSESSION AS NOTICE OF RIGHTS.—Possession by a railroad of a portion of its right-of-way was notice of its claim thereto, and, though the contract upon which such claim was based was not recorded, the purchaser was put upon inquiry as to the extent of such right-of-way.

2. RAILROADS—AGREEMENT FOR RIGHT-OF-WAY—DEFINITENESS.— Though an agreement conveying a right-of-way did not describe the lots and blocks through which the railway was to run, this

did not render the instrument void for indefiniteness, where it expressed the purpose to enable the railroad to reach a certain river, and the construction of the road made its location definite and certain.

3. RAILROADS—NONUSER OF PART OF RIGHT-OF-WAY.—Though a railroad did not use all of its 100 feet of right-of-way; this did not constitute an abandonment, so as to permit another to erect a building on the unused portion.

4. EVIDENCE—MAP OF RIGHT-OF-WAY.—In determining the location of a railroad's right-of-way, it was not error to permit the recorder to offer in evidence a certain map showing the location of the right-of-way and its width on the ground, though it was not marked filed, if it was in fact filed with the recorder.

5. TRIAL—DIRECTION OF VERDICT.—Where both parties request a directed verdict, and neither asks any other instruction nor offers to introduce further testimony, they thereby submit the case to the decision of the court, and the court's finding will have the same effect as the verdict of a jury.

Appeal from Pope Circuit Court; *J. T. Bullock,* Judge; affirmed.

*Robert Bailey,* for appellant.

*Hays, Priddy & Rorex,* for appellee.

SMITH, J. The Dardanelle & Russellville Railroad Company, hereinafter referred to as the railroad, brought suit against appellant, in which, after alleging its corporate capacity, it further alleged that it owned a right-of-way for railroad purposes across lots 11 and 12, block 56, in J. L. Shinn's addition to the city of Russellville, and that appellant claimed to own a portion of this right-of-way, and was erecting a building thereon, and there was a prayer for judgment for possession of the disputed right-of-way. There was an alternative prayer that, if it be found that the right-of-way of the railroad did not include a strip of land across said lots extending a distance of fifty feet from the center of the track, a right-of-way of that width be condemned.

The answer in the case denied that the railroad company owned a right-of-way of greater width than that occupied by its roadbed, and alleged that defendant was the owner of the remainder of said lots, under a deed from the heir-at-law of J. L. Shinn, deceased.

The complaint in the case alleged that the right-of-way had been acquired by a contract between the railroad and J. L. Shinn, so that Shinn is the common source of title,

The railroad offered in evidence a certain contract between itself and Shinn, which contemplated the operation of a ferry-boat across the Arkansas River near Dardanelle, and, among other considerations for this agreement, was the right granted to the railroad to run the line of the railroad across "all such lands as the party of the first part (Shinn) now owns in the said county of Pope, provided that no more than fifty feet of the right-of-way so granted is to be used until such time as it may become absolutely necessary for the keeping up and maintaining of said road, the necessity of which is to be determined by the board of directors (of the railroad), except in places where the one hundred feet are necessary."

Objection was made to the introduction of this instrument, upon the ground that it had never been placed of record, and that defendant had bought without knowledge of its existence, and also upon the ground that it was void for indefiniteness, in that it contained no description of the right-of-way granted except that it was over any lands owned by Shinn in Pope County, the county in which the lots were situated.

The railroad then offered in evidence a map showing a survey of the right-of-way over the lands in question, and, according to this survey, the right-of-way was 100 feet wide.

The map showing this survey was produced by the clerk and recorder, and objection was made to its introduction upon the ground that it had never been recorded, and had not even been marked filed for record. The clerk testified, however, that the plat of the survey had been in the custody of himself and his predecessors in office for many years, and had been kept in the place where similar maps and plats were kept.

As we have said, both parties claim under Shinn, and the testimony did not show that the railroad had ever made use of the portions of the lots conveyed to defendant by the heir at law of Shinn, which is included in the railroad right-of-way. In other words, the railroad had not used all its right-of-way through the lots.

The railroad was in the actual possession of a portion of the right-of-way and used it constantly in connection with the operation of its trains. This possession was notice that the railroad had or claimed a right-of-way, and the fact that the agreement or contract upon which this claim was based was not of record did not relieve defendant of the duty, before purchasing, of inquiring what was the extent of the right-of-way which the company owned. This point was settled in the case of *Campbell* v. *Southwestern Telegraph & Telephone Co.*, 108 Ark. 569, 158 S. W. 1085, where the same question was raised. It was there said: "The right-of-way deed was not placed of record until after J. M. Jones conveyed the quarter section of land to the plaintiff; but the railroad had been constructed, and the company's occupancy of the roadbed was sufficient to put all persons on inquiry as to the extent of its right-of-way. Plaintiff, when she purchased the land, was chargeable with notice of the extent of the railroad company's rights."

We think the agreement, which was, in effect, a conveyance of the right-of-way, was not void for indefiniteness. It did not describe the lots and blocks through which the railroad was to run, but a reading of the agreement shows its purpose to have been to enable the railroad to reach the river, so that freight might be transferred to and from the river and be ferried across the river, and, pursuant to this agreement, the raiload was constructed across the lots in question. The construction of the railroad made its location definite and certain, and necessarily the railroad's claim of the right-of-way granted would have been confined to the road constructed, and was not to exceed 100 feet. Shinn owned the lots across which he had granted the right-of-way, and the

railroad had been in operation for many years when defendant purchased from the heir-at-law of Shinn. No question is made that the directors of the company had not determined that a right-of-way of a hundred feet was required for railroad purposes.

It is true the railroad had not actually occupied the portions of the lots upon which defendant was erecting a building, but a portion of the ground upon which he proposed to do so was embraced within the right-of-way granted to the railroad by Shinn, and this right-of-way was not lost or abandoned because the whole of it was not used. This point is controlled by the opinion in the case of *Ritter* v. *Thompson,* 102 Ark. 442, 144 S. W. 910, where it was said: "The deed (to the right-of-way), in our opinion, conveyed to the railroad company the entire strip of land mentioned therein; and, so long as any part of the same was being used for railroad purposes, appellant (the grantor) could not enter and take possession of any part that might not be used for the easement or right-of-way."

We think no error was committed in permitting the clerk and recorder to produce and offer in evidence the map showing the location of the right-of-way and its width. This map had evidently been filed, and with the proper officer, although the fact of filing had not been indorsed upon the map, as should have been done. In the case of *Hogue* v. *Hogue,* 137 Ark. 485, 208 S. W. 579, we said: "While the certificate of the clerk entered upon the demurrer at the time of its receipt is the best evidence of such filing, it is not conclusive evidence to that effect, and it was competent to show by parol evidence what was intended. The reason is that, while it is proper for the clerk, when he receives papers, to indorse thereon the date of the filing, such indorsement is not the filing, but is simply an evidence of such filing. A paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file. *Bettison* v. *Budd,* 21 Ark. 578; *Eureka Stone Co.* v. *Knight,* 82 Ark. 164 [100 S. W. 878]. See also *Peterson* v. *Taylor,* 15 Ga. 483; *Powers* v. *State,* 87 Ind. 144; and *Grubbs* v. *Corres,* 57 Mo. 83."

Moreover, the testimony set out above, without this map, shows the location of the railroad and the width of the right-of-way.

It is finally insisted that the court erred in refusing to hear and consider testimony which defendant would have offered. The judgment, however, recites that the company, "having introduced its evidence, the jury, under the direction of the court, retired, and the defendant, Tom Dunford, by his attorney, moves the court for a peremptory instruction for the defendant." The plaintiff also moved for a peremptory instruction for plaintiff. "Whereupon the court instructed the jury to return a verdict for the plaintiff railroad company, which was accordingly done."

We understand this recital to mean that, upon the conclusion of the introduction of the testimony for the plaintiff railway company, each party asked a peremptory instruction in its own favor, and neither asked any other instruction, nor did the defendant ask permission to introduce further testimony.

It is the settled practice in this State, where both parties ask a directed verdict, and neither asks any other instruction nor offers to introduce further testimony, to treat the case as having been withdrawn from the jury and submitted to the court for decision, and, upon a review of the decision, we give the same effect to it as would be given to the verdict of a jury, and affirm the decision if the testimony tending to support it is legally sufficient for that purpose. *St. L. Sw. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643; *Webber* v. *Rodgers,* 128 Ark. 28, 193 S. W. 87.

The testimony is legally sufficient to support a finding that the railroad company is the owner of the land in controversy as right-of-way, upon which the defendant had entered, and the judgment of the court awarding the possession to the railroad company is therefore affirmed.