BUCHANAN v. COMMERCIAL INVESTMENT TRUST.

Opinion delivered June 18, 1928.

*McRae & Tompkins,* for appellant.

*Bush, Bush & Bush,* for appellee.

HART, C. J., (after stating the facts). We will first take up and determine the rights of the parties on the cross-appeal of the Commercial Investment Trust, because it is based upon the motion of the Commercial Investment Trust to dismiss the appeal of A. S. Buchanan in the circuit court on the ground that the appeal taken

by him from the judgment of the court of common pleas was not taken within the time prescribed by statute.

The Legislature of 1893 passed an act to establish a court of common pleas in Nevada County. Acts of 1893, p. 190. The act provides for quarterly sessions of said court in the town of Prescott, and the judge of the county court was made the judge of the court of common pleas. The clerk of the circuit court was made ex-officio clerk of the court of common pleas. Section 12 of the act provides that any party aggrieved by the judgment rendered by the court of common pleas might take an appeal to the circuit court at any time within thirty days from the rendition of the judgment, by filing a proper affidavit with the clerk of the court and giving the bond prescribed by the statute, in case it was desired to suspend the judgment. The judgment by default was rendered in the court of common pleas on the 16th day of November, 1927. According to the testimony of the judge of the court of common pleas, the attorney for A. S. Buchanan exhibited what he called an affidavit for appeal and bond for appeal in the office of the judge of the court of common pleas on the 19th day of November, 1927. He laid the papers down on the desk of the judge, and there was some discussion between the attorneys as to the proper form of the judgment. The clerk was not there at that time, but came in later with some of the original papers in the case. Subsequently the papers became lost, and there was some effort made to substitute copies of all the original papers in the case. A few days after the thirty days since the rendition of the judgment had expired, the judge of the court of common pleas found the original affidavit and bond for appeal in his office, and attempted to indorse thereon the file mark of a date within thirty days from the rendition of the judgment. The affidavit and bond for appeal, in fact, however, did not have any file mark on them.

The circuit court properly overruled the motion to dismiss the appeal. The act of leaving or depositing the paper in the proper office constitutes a filing of it. A

paper is filed within the meaning of the law when it is delivered to the proper officer and received by him to be kept on file. The file mark is evidence of filing, but is not the essential element of the act. *Eureka Stone Company* v. *Knight,* 82 Ark. 164, 100 S. W. 878. Hence the circuit court was justified in finding that the affidavit and bond for appeal were left in the proper office to be filed, and that the act of leaving them there within thirty days after the rendition of the judgment constituted a filing within the legal meaning of the word, although there was no indorsement on the affidavit and bond for appeal that they had been filed.

It is earnestly insisted that there was no filing with the clerk as required by the statute. It is true that the clerk was not in the room at the time the attorney for Buchanan first laid the papers on the desk of the presiding judge and told him that he was intending to take an appeal, but the clerk came in later with some of the original papers in the case, and it is fairly inferable that he knew that the affidavit and bond for appeal had been deposited in the office for the purpose of being filed. They were afterwards found by the presiding judge among the original papers in the case, and it is fairly inferable that they were placed there by the clerk. The original papers were subsequently lost, and a *bona fide* effort was made by the attorneys on both sides to supply them; but, before this was done, the judge of the court of common pleas found the original papers, and the affidavit and bond for appeal were among them. In this state of the record the circuit court was justified in finding that the affidavit and bond for appeal were deposited by the attorney for Buchanan in the place where the official record and papers of the court of common pleas were usually kept, and were placed there for the purpose of being filed in accordance with the provisions of the statute creating the court of common pleas.

In this connection it may be stated that the attorneys on both sides of the case testified about the matter, but we do not deem it necessary to set out their testimony.

They are both men of high standing in their profession, and we deem it proper to say that there is nothing in the testimony of either of them which would tend to reflect in any way on their honesty or integrity. On the contrary, their testimony reflects credit on their official character as lawyers, and justifies the continuance of the former good opinion in which each of them is held by this court.

This brings us to a consideration of the appeal on the merits. In a case-note to Ann. Cas. 1916A, p. 90, it is said that, if a vendor makes a conditional sale of goods to a retailer for the express or implied purpose of resale, the vendor will not be permitted to maintain title thereto as against a person who buys in the ordinary course of trade from the retailer; and decisions of numerous courts of last resort in the United States are cited in support of the text.

Again, in the case-note to 47 A. L. R., at page 87, it is said that, where goods are sold on conditional sale, with express or implied authority to the buyer to resell them, a purchaser from the buyer obtained good title thereto, and numerous cases are cited in support of the text.

In the reported case of *Gump Investment Co.* v. *Jackson,* 142 Va. 190, 128 S. E. 506, 47 A. L. R. 82, it was held that an automobile financing company, which permits a dealer to keep a new car in his salesroom after a pretended sale under a recorded conditional sales contract, the note representing the purchase price of which, and the contract securing the same, it has purchased, must bear the loss, where the dealer sells the car to an innocent purchaser for cash, which he retains, and becomes insolvent without satisfying the note.

This is in accordance with our decisions. It has been decided in this State that, if a person makes a mortgage of automobiles to another for the purpose of being re-sold by him as retail dealer, the original seller cannot retain title thereto as against a *bona fide* and innocent purchaser from the original purchaser. *Coff-*

*man* v. *Citizens' Loan & Investment Company,* 172 Ark. 889, 290 S. W. 961. Again, in *Commercial Credit Company* v. *Hardin,* 175 Ark. 811, 200 S. W. 434, it was held that, in an action by one who had purchased an automobile left with the dealer by the owner to sell, in which it was shown that the car had been transferred to another before plaintiff purchased, and note and sales contract had been taken by the dealer and sold to a credit company, evidence tended to show that the first transfer was fraudulent as to the owner.

In the application of this rule to the facts in the record in the case at bar, the court erred in excluding from the jury the testimony of Horace J. Estes, to the effect that he told the representative of the Knight Overland Company, when he purchased the car in question, that he was buying the car for the purpose of selling it in his business. The witness had already testified that he was a retail dealer in Willys-Knight automobiles at Prescott, Arkansas, and that he had purchased between forty and fifty cars from the Knight Overland Company. This results from the application of the rule above declared. The excluded testimony would have tended to show that the seller of the car in controversy knew that the purchaser was a retail dealer in automobiles and was buying the car for the purpose of selling it in his business. It is true that, in his written statement, he said that he was buying the car for his own use, but the excluded testimony would have tended to show that his written statement might not be true, and would have tended to show what the real agreement between the parties was.

A case directly in point is *Spooner* v. *Cummings,* decided by the Supreme Court of Massachusetts, 151 Mass. 213, 23 N. E. 839. In that case it was held that a purchaser from a vendee in possession of a chattel under a written contract, by which the title to remain in the vendor until the price was paid, and to which the purchaser was not a party, may, in replevin by the vendor under a general denial, contradict the contract by show-

ing the real agreement of the parties thereto. In that case the plaintiff had sold a horse to one Pope under a conditional agreement that the title should remain in plaintiff until the horse was paid for; and Pope, without paying for the horse, sold it to the defendant, who was an innocent purchaser. It was held that, evidence tending to show that, according to the course of dealing between the plaintiff and Pope, it was expected that Pope was to resell the horse, was admissible, and that, if it appeared that the plaintiff expressly or impliedly authorized the sale, the defendant, having bought it in good faith from the appellant owner, acquired a good title by estoppel.

In the present case the undisputed evidence shows that Buchanan bought the automobile in good faith from Estes and paid him therefor, believing that he was acquiring a good title to the automobile. The excluded testimony would have tended to show that Estes had at least implied authority to resell the automobile, notwithstanding he had declared in his written statement that he was purchasing it for his own use.

For the error in excluding the offered testimony the judgment will be reversed, and the cause will be remanded for a new trial.