## DINKELSPIEL et al. v. GARRETT et al.
### Civ. 460.

United States District Court
W. D. Arkansas, Hot Springs Div.
April 19, 1951.

H. W. McMillan, Arkadelphia, Ark., for plaintiff.

Willis V. Lewis, Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

#### Statement

This is a suit by the plaintiff, as Trustee in Bankruptcy for James Roland Shepherd, Bankrupt, to have a transfer of a certain automobile to the defendant declared a

preference within the provisions of Title 11 U.S.C.A. § 96, and to recover from the defendant the said automobile or the value thereof.

The case came on for trial to the court on April 10, 1951, at the conclusion of which the court took the case under advisement, and, having duly considered the testimony adduced at the trial, the exhibits thereto, and the authorities presented by counsel for the respective parties, makes and files the following findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1

James Roland Shepherd filed his voluntary petition in bankruptcy in this court on September 13, 1950, and was adjudicated bankrupt as of September 14, 1950. Plaintiff, Leon Dinkelspiel, is the duly appointed Trustee in Bankrupcty for said James Roland Shepherd, Bankrupt, and brings this suit in his capacity as such.

### 2

Prior to his adjudication as a bankrupt, James Roland Shepherd was a dealer in new and used automobiles doing business as the Shepherd Motor Company at Arkadelphia, Arkansas. His operations were extensive and resulted in a rapid turn-over of new and used vehicles. Much, if not the major portion, of his business was as a wholesaler, that is, he purchased large quantities of vehicles from various dealers in Chicago, Illinois, Little Rock, Arkansas, and elsewhere, and immediately sold them to dealers in other States. Normally these vehicles would be picked up at the place of business of the seller by his drivers and would remain on his lot in Arkadelphia a very short time, if at all, before being transported on to those purchasing from him. The records kept by Shepherd were entirely inadequate and do not accurately reflect the extent of his operations. During the period of his operations his bank account constantly fluctuated, at times showing a substantial balance and at other times being completely depleted.

### 3

Defendant, Gene Garrett, was engaged in business as a wholesaler of motor vehicles in Little Rock, Arkansas. He had sold the bankrupt, Shepherd, various vehicles from time to time in the past. It was his practice to transact business on a cash basis. If cash was paid for a vehicle, he normally transferred title papers to the vehicle at the time of the sale, but in the event a check was given, title papers were withheld until the check had cleared the bank. According to his testimony, it was necessary that he operate in this manner since he had to remit the purchase price of the vehicles to those from whom he had purchased at the time of or immediately after a sale by him to a third party.

On July 31, 1950, Garrett delivered three vehicles to drivers of Shepherd and took in payment therefor three checks drawn on the Citizens National Bank of Arkadelphia, Arkansas. And, on August 2, 1950, Garrett delivered additional vehicles to drivers of Shepherd and took in payment therefor checks drawn on the same bank. No title papers of any kind were transferred by Garrett to Shepherd at the time the vehicles were delivered, or at any time subsequent thereto. This was pursuant to Garrett's practice of withholding the transfer of title until the checks had cleared. On August 2 or 3, 1950, Garrett's bank notified him that payment on the checks had been refused due to insufficient funds in Shepherd's account. Garrett immediately went to Arkadelphia to investigate the matter and to either secure payment or to recover the vehicles.

When Garrett arrived he found representatives of other dealers, who had delivered vehicles to Shepherd without receiving payment, at Arkadelphia for the same purpose. Two such concerns were the Broadway Car Company of Chicago, Illinois, and West Peach Street Motors of Atlanta, Georgia. The representatives of the latter two companies recovered various vehicles on Shepherd's lot and also obtained, apparently by going through Shepherd's files in his office, various title papers to the automobiles recovered and to others

that had been delivered to Shepherd but which were not on the lot.

Garrett checked the status of Shepherd's account at the bank and talked with certain officials thereof, who verified that the account was entirely depleted. After being advised of this fact, and having ascertained that the other dealers, referred to above, were "cleaning the lot" of vechicles, Garrett undertook to trace the vehicles delivered by him to Shepherd on July 31 and August 2 and recover them. He succeeded in locating and obtaining possession of all such vehicles, except a Chevrolet ½ ton truck, one of the vehicles sold on July 31, 1951, the purchase price of which was $1450. As to this vehicle, he was advised by Shepherd that it had been sold to a third party, and Shepherd requested him not to take steps to repossess it, in as much as Shepherd had sold it for a profit and the latter did not want to cause the purchaser the difficulties which would result from Garrett's efforts to repossess the same. Garrett acceded to this request.

At this point there is somewhat of a conflict in the testimony. However, certain facts are undisputed, and certain inferences from the facts logically follow. Shepherd used a 1948 Oldsmobile automobile as his family car. There was some testimony that this automobile belonged to Shepherd's wife but all of the facts disclose that Shepherd was the actual owner thereof. Title certificate on the Oldsmobile was kept in his office files. The title had been assigned in blank by the former owner and was retained in that form in the files. Garrett obtained the title certificate from Grady Pate, an employee of Shepherd's, and took the Oldsmobile from the street in front of Shepherd's office. Garrett testified that he and Shepherd made a deal whereby Garrett would take the Oldsmobile for the Chevrolet truck and Shepherd would pay Garrett $150 extra. Shepherd admits that he requsted Garrett not to repossess the Chevrolet truck but his testimony was very vague about the remainder of the transaction, stating, in effect, that there was nothing he could do about Garrett taking the Oldsmobile. In this regard the testimony of Garrett is consistent with all the facts and the court accepts it. Shepherd was advised that Garrett was demanding all of the vehicles delivered to Shepherd and made a special request of Garrett not to repossess the Chevrolet truck. The court believes that Garrett, obviously a man who is zealous in protecting his own interests, would not have acceded to this request had he not been able, in his opinion at the time, to adequately protect his interests in the matter. He felt that he could do so by accepting the Oldsmobile. This must have appeared to be the best solution at the time, for certain difficulties probably would have been encountered in attempting to repossess the Chevrolet truck, especially if the one who had purchased it from Shepherd were a bona fide purchaser.

The fair market value of the Oldsmobile at the time was $1300, whereas the Chevrolet truck was delivered to Shepherd for $1450. The $150.00 difference was never paid to Garrett, and he did not file a claim with the trustee for that sum.

4

During the first part of September, 1950, Shepherd had his books examined by a Certified Public Accountant, who found that his debts greatly exceeded his assets. And, as stated above, shortly thereafter, September 13, 1950, Shepherd filed his voluntary petition in bankruptcy.

The plaintiff, Trustee in Bankruptcy, testified that the outstanding claims of creditors vastly exceeds the assets of the estate, and in his opinion, the other creditors in the same class as Garrett, should the transfer involved be held to be a preference, would probably get no more than 2% on their claims, and certainly not as much as 25%.

5

Around August 5, 1950, after defendant and the other dealers had removed all vehicles from his lot, Shepherd ceased operations. As stated above, an audit of his books made the first part of September revealed that the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be

concealed or removed, with intent to defraud, hinder, or delay his creditors, was not at a fair valuation sufficient in amount to pay his debts. And, this accurately reflects Shepherd's financial condition on August 3 and 4, 1950, or on the date of the transfer of the Oldsmobile to Garrett.

If Garrett did not have actual knowledge of the fact that Shepherd was insolvent on the date of the transfer of the said Oldsmobile automobile, the facts, previously set forth, that were obviously within his knowledge, were such as would have incited a man of ordinary prudence to make further inquiry. The facts within the knowledge of Garrett on that date, representing the affairs and pecuniary condition of Shepherd, were such as would have led a business person of ordinary prudence to the conclusion that Shepherd was insolvent, and therefore, Garrett, at that time, had reasonable cause to believe that Shepherd was insolvent.

## Discussion

According to the provisions of Title 11 U.S.C.A. § 96, sub. a, a preference is (1) a transfer of any of the debtor's property that is (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) made or suffered by the debtor while insolvent and (5) within four months of bankruptcy, (6) the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. To enable the trustee to avoid such preference, it must further appear that the creditor receiving the preference must have "at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent." Sec. 96, sub. b.

Excluding elements (2) and (3), the other elements necessary for a preference and the avoidance of the same adequately appear from the facts hereinbefore set forth and need no discussion. As to (2), to or for the benefit of a creditor, and (3), for or on account of an antecedent debt, discussion seems advisable.

As the court understands defendant's contention, it is that the transfer of the Oldsmobile was pursuant to a "complete new deal". That is, that the transfer was for a new and contemporaneous consideration, an exchange of the Oldsmobile for the Chevrolet truck, which did not deplete or diminish the debtor's estate, since the value of the Chevrolet truck exceeded that of the Oldsmobile. If this contention is sound, then there is no preference, since the transfer would not be to or for the benefit of a creditor or for or on account of an antecedent debt. Therefore, the facts must be considered to determine the exact nature of the transaction or transactions resulting in this transfer.

Shepherd had made similar transactions with Garrett in the past. He knew from past transactions that Garrett did not transfer title papers until checks given in payment of vehicles purchased had cleared, and on the particular vehicle involved he accepted the same, after presentation of his check, without a bill of sale or other title papers. It may fairly be concluded that it was the intention of the parties that title be retained until payment was obtained, and that this was a conditional sale transaction, that is "a transaction in which a seller transfers the possession of goods to a buyer, on credit, with the understanding that title to the goods shall not pass from seller to buyer until the latter has paid the price." See: Vol. 4, Arkansas Law Review, "Conditional Sales in Arkansas", page 19. Such a contract need not be in writing and may rest wholly in parol. Sykes v. Carmack, 211 Ark. 828, 830, 202 S.W.2d 761.

As to the effectiveness of retention of title under a conditional sale against an innocent purchaser from the buyer, when the seller knew the buyer was a dealer purchasing for resale, see: Buchanan v. Commercial Investment Trust, 177 Ark. 579, 7 S.W.2d 318; and Smith v. Kirkpatrick Finance Company, 181 Ark. 1031, 28 S.W.2d 1050. And, while generally conditional sale contracts are effective without recording, except in the instance mentioned in the preceding sen-

tence, recording is necessary in the case of registered vehicles. Sec. 75–160(a), Ark.Stats. (1947) provides that "No conditional sale * * * is valid as against the creditors of an owner acquiring a lien by levy or attachment or subsequent purchasers or encumbrances with or without notice until the requirements of this article have been complied with." And, Sec. 75–161(a) provides that filing with the department (Title Department of the Motor Vehicle Division) shall constitute constructive notice; if filed within 10 days from date of execution such notice shall date from the time of the execution of the document; otherwise notice shall date from the time of receipt and filing of such document by the department.

As to property other than real property, a transfer is made or suffered "at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." Title 11, U.S.C.A., § 96, sub. a (2). Thus, as to motor vehicles in Arkansas, if the conditional sale contract is recorded within the 10 day period prescribed in Sec. 75–161, Ark.Stats. (1947), it is effective for notice purposes as of the date of the execution of the contract, and, therefore, is perfected on that date, when the consideration is present and not antecedent. However, if not filed within the 10 day period it is effective for notice only from the time of filing, and for preference purposes the transfer is made as of the date of filing rather than the date of the execution of the contract. Title 11 U.S.C.A. § 96, sub. a (7). If the purchaser's execution of a conditional sale contract be deemed a transfer within the meaning of Sec. 96(a), then in the situation referred to in the preceding sentence, the transfer of the purchaser's interest would be made after the debt had arisen, and, therefore, the debt secured would be antecedent. See: Collier on Bankruptcy, 14th Ed., Vol. 3, pages 917–920, inclusive; and pages 938–947, inclusive. And, if the other elements necessary for the avoidance of a preferential trans-

fer be established, the trustee could attack and set aside the transfer as preferential. As to whether the purchaser of the Chevrolet truck from Shepherd was an innocent purchaser in the normal course of business was not fully developed at the trial. What evidence there is on the point indicates that he was. Neither does the evidence reveal that Garrett complied with Secs. 75–160 and 75–161 of Ark.Stats. (1947), and the evidence in the record indicates that he did not, because the conditional sale contract was oral and Garrett did not receive the title certificate showing the transfer of the vehicle to him until August 10 or 11, 1950. And, while it is not necessary to so determine in order to dispose of the issue before this court, in all probability Garrett could not have recovered the Chevrolet truck from the one who purchased from Shepherd. As a dealer, Garrett was probably aware of the fact that repossession would be difficult if not impossible, and this prompted him to look elsewhere for the satisfaction of his debt. In any event, however, the fact remains that he did accept the Oldsmobile instead of attempting repossession, and, therefore, made himself a creditor by choice. As expressed in Collier on Bankruptcy, 14th Ed., Vol. 3, page 942: "Obviously, if the vendor took in return goods other than those specified in the contract, a preference was created, if the return was within four months of bankruptcy and the other elements then existed." See, also: In re Sachs, D.C.D. Md., 31 F.2d 799.

An anology may be drawn to the situation where one's goods are stolen or misappropriated, converted or fraudulently obtained, in that the owner has the choice of standing on his rights as owner and demanding the return of his goods, which he can successfully do provided the specific goods can be traced, or electing to treat the one taking the goods as a creditor and satisfying his claim by the methods available to a creditor. Concerning the latter alternative, it is stated in Collier on Bankruptcy, 14th Ed., Vol. 3, page 820: "If the owner elects to treat the bankrupt as a debtor, then the owner

becomes a creditor, and any transfer of the debtor's property to him to make good the loss occasioned by the misappropriation, conversion or fraud may constitute a voidable preference." As regards this matter, the court, in Morris Plan Industrial Bank of New York v. Schorn, 2 Cir., 135 F.2d 538, 539, said: "Also in line is the well settled rule that property converted, embezzled, or otherwise taken by the bankrupt, or obtained by him by fraud, can be claimed from the bankrupt estate only so long as it can be definitely traced, with the consequence that an attempted repayment by the bankrupt prior to bankruptcy is a preference, except where made from the very property taken (citing cases)."

■ Thus, it follows that elements (2) and (3) are present under the facts of this case, in that Garrett made himself a creditor by choice in accepting the Oldsmobile, and the transfer of the Oldsmobile on August 4 or 5, 1950, was for the antecedent debt created by the transfer to Shepherd of the Chevrolet truck on July 31, 1950.

## Conclusions of Law

### 1

The court has jurisdiction of the parties and of the subject matter of this case. Title 11 U.S.C.A. § 96, sub. b.

### 2

The transfer of the Oldsmobile automobile from Shepherd to Garrett on August 4 or 5, 1950, was a transfer of the debtor's (Shepherd's) property that was to and for the benefit of a creditor (Garrett), for and on account of an antecedent debt, made and suffered by the debtor (Shepherd) while insolvent and within four months of bankruptcy, the effect of which transfer will be to enable such creditor (Garrett) to obtain a greater percentage of his debt than some other creditor of the same class, and was, therefore, a preference within the provisions of Title 11 U.S.C.A. § 96, sub. a. At the time when the transfer was made, Garrett had reasonable cause to believe that the debtor (Shep-

herd) was insolvent, and, therefore, the preference should be avoided. Title 11 U.S.C.A. § 96, sub. b.

### 3

Since the transfer of the Oldsmobile automobile involved herein from Shepherd to Garrett was null and void in violation of Title 11 U.S.C.A. § 96, the plaintiff, Trustee in Bankruptcy for James Roland Shepherd, Bankrupt, is entitled to recover the sum of $1300, the fair market value of the automobile at the time of the transfer, of and from the defendant Gene Garrett, d/b/a Gene Garrett Motor Sales.

### 4

Judgment in accordance with the above should be entered, and costs should be assessed against the defendant.