COFFMAN v. CITIZENS' LOAN & INVESTMENT COMPANY.

Opinion delivered February 14, 1927.

1. EQUITY—EXHIBITS TO COMPLAINT.—Exhibits to a complaint in equity become, for all purposes of pleading, a part of the complaint, and on demurrer may be used in aid of a defective statement in the complaint itself, and may be looked to for the purpose of testing the sufficiency of the allegations of the complaint.

2. MORTGAGES—FRAUDULENT CONVEYANCE.—Chattels brought for the express purpose of daily, indiscriminate sale to the general public, exposed for such sale at the place of business of a dealer, and over which the dealer is permitted to exercise the dominion of owner, cannot be made the subject of a valid chattel mortgage, though, as in the case of an automobile, they may be of considerable size, value and capable of identification.

3. MORTGAGES—STIPULATION AGAINST SALE—WAIVER.—A stipulation in a mortgage on automobiles against the sale, conversion or removal is waived by the mortgagee knowingly permitting its violation.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

STATEMENT BY THE COURT.

On June 19, 1925, the Citizens' Loan & Investment Company filed a complaint in the Pulaski Chancery Court against the Yale Automobile Company, H. R. Coffman, receiver of said company, and the General Motors Acceptance Corporation, to foreclose a lien claimed by it on certain Chevrolet cars of the Yale Automobile Company, sold by said company to various customers, and notes retaining title in the cars until paid for, which were transferred to the Citizens' Loan & Investment Company. Judgment is sought against the General Motors Acceptance Corporation for the value of a car upon which the plaintiff claimed a lien, and which, it is alleged, the latter corporation converted to its own use. A decree of foreclosure of the lien of the plaintiff is also asked and judgment against the Yale Automobile Company for the amount of the plaintiff's debt.

The General Motors Acceptance Corporation brought suit in replevin against the Yale Automobile Company

and the England National Bank, in which it sought to recover the possession of certain automobiles turned over to said bank by said automobile company under certain mortgages, which are claimed to be void. The complaint alleged that the General Motors Acceptance Corporation was the owner of said automobiles, and entitled to possession thereof. The ground upon which the plaintiff in that suit claimed title and possession to the cars is that they were sold to customers by the Yale Automobile Company and notes taken for the purchase price thereof. The title was retained until the purchase price was paid, and the notes for the purchase price were assigned to the plaintiff in the replevin suit. By consent, the replevin suit was transferred to the chancery court and consolidated with the suit brought in that court by the Citizens' Loan & Investment Company.

The England National Bank filed an answer and cross-complaint, and, by consent of all parties, the cases were consolidated for trial. Inasmuch as a demurrer was sustained to the cross-complaint by the chancellor, we need only set out the issues raised by the cross-complaint.

The cross-complaint of the England National Bank alleges that the Yale Automobile Company was indebted to said bank on different dates for various sums of money, and to secure said indebtedness executed its several mortgages on certain automobiles, which are specifically described in the cross-complaint. Said mortgages were duly filed for record in Pulaski County, Arkansas. Copies of the mortgages are exhibited with the cross-complaint. In order to save cost, it is agreed that the exhibits A to J inclusive, which are copies of said mortgages, are identical in form, words and figures, except for the difference in car numbers and types as set out in the cross-complaint. It is further agreed that Exhibit K, which is a copy of one of the mortgages, is the form upon which all of them were prepared. We copy from this mortgage the following:

"Whereas, party of the first part is indebted unto party of the second part in the sum of (amount) dollars ($ ), which is payable ninety days after date, and which is evidenced by the promissory notes of the party of the first part of even date herewith. This chattel mortgage is given as security to above note or any renewal thereof.

"Whereas, party of the first part is to retain possession of automobiles above described as long as the party of the second part shall deem said debt and said security safe and secure, and as long as the conditions of this mortgage shall be faithfully observed and fulfilled, and the party of the second part may take possession of the automobiles above described at any time it may deem the security unsafe, or that the conditions of the mortgage are not being faithfully observed.

"Now it is hereby agreed that the party of the first part will, until payment of the said indebtedness shall have been made in accordance with the terms set forth, hold and keep all of said automobiles in brand-new condition, and will not operate any of them for demonstration or for any other purpose, and it is further agreed that said party of the first part will not sell, loan, rent, deliver, mortgage, pledge, or otherwise dispose of any of said automobiles until it shall first have paid to said party of the second part the amount which the party of the first part may desire to dispose of and shall have obtained from party of the second part an instrument of writing releasing the said automobile or automobiles from the lien of this instrument.''

Another exhibit to the cross-complaint contains a copy of the form of notes prepared by the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation for the use of the Yale Automobile Company in selling cars to its customers. Title is retained in each car sold until it has been paid for, and the notes were transferred to the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation for money advanced by these companies to

the Yale Automobile Company for use in carrying on its business.

The exhibits to the cross-complaint are very voluminous, and for that reason we do not set them out. It is sufficient to say that it is fairly inferable from them that the Yale Automobile Company was a dealer in Chevrolet cars in the city of Little Rock, and, from time to time, transferred notes to the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation to secure money with which to carry on its business as such dealer in automobiles. These notes were on printed forms prepared by said companies, and retained title in the car until the purchase price of the car was paid. There is no dispute about the Yale Automobile Company being indebted to the England National Bank, Citizens' Loan & Investment Company and the General Motors Acceptance Corporation. The mortgages executed by the Yale Automobile Company to the England National Bank were filed for record prior to the time the dealers' notes above referred to were transferred by the Yale Automobile Company to the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation.

The chancellor was of the opinion that the mortgages by the Yale Automobile Company to the England National Bank were invalid as against *bona fide* creditors of the Yale Automobile Company, and rendered a decree in favor of the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation. To reverse that decree the England National Bank has duly prosecuted an appeal to this court.

*J. A. Sherrill*, for appellant.

*Frank H. Dodge, John W. Newman* and *Rogers, Barber & Henry*, for appellee.

HART, C. J., (after stating the facts). At the outset, it may be stated that, under the practice in equity, exhibits to a complaint become, for all purposes of pleading, a part of the complaint, and consequently on demurrer may be used in aid of a defective statement in

the complaint itself, and may be looked to for the purpose of testing the sufficiency of the allegations of the complaint. *Moore* v. *Exelby,* 170 Ark. 908..

It is fairly inferable from the allegations in the cross-complaint, when read in connection with the exhibits thereto, that the Yale Automobile Company was a dealer in Chevrolet cars during the time all the transactions involved in this suit were had. The exhibits show that the Yale Automobile Company sold cars to individuals and took notes for all or a part of the purchase money, retaining title in itself until the purchase price was paid. These notes were made on printed blanks furnished by the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation. This arrangement was made pursuant to agreements between the Yale Automobile Company and the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation, whereby the former was to borrow money from the two latter companies for use in its business and transfer said conditional sale notes to them in payment of the same.

The England National Bank had taken mortgages on all cars furnished to the Yale Automobile Company by the manufacturer of the cars and had duly filed said mortgages of record. All these chattel mortgages were filed for record before the cars were sold by the Yale Automobile Company to customers and conditional sale notes were taken for the purchase price thereof and transferred to the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation.

It is the contention of counsel for the England National Bank that the chattel mortgages given by the Yale Automobile Company were valid and gave it a lien prior to that which might be subsequently secured by the creditors of the Yale Automobile Company. We do not agree with counsel in this contention. We think the case is settled by the principles of law decided by the Virginia Supreme Court of Appeals in *Boice* v. *Finance & Guaranty Corporation,* 102 S. E. 591, 10 A. L. R. 654,

In that case the court held that property bought for the express purpose of daily indiscriminate sale to the general public, exposed for such sale at the place of business of a licensed dealer, and over which the dealer is permitted to exercise the dominion of owner, cannot be made the subject of a valid chattel mortgage, though, as in the case of an automobile, it is of considerable size and value, and capacity of identification.

Inasmuch as this is the only case bearing directly upon the issues involved in the case at bar, we copy extensively from the opinion and adopt the reasoning thereof. The court said:

"It is a matter of common knowledge, and will therefore be judicially noticed, that, in the large cities, there are department stores in which a customer can buy almost anything from a nut-cracker to a threshing machine, from a doll carriage to an automobile. It would never occur to a customer that he must be on his guard to see whether the article was bulky, of large value, and easily susceptible of identification, and, if so, to examine the registry for liens thereon. Besides, many of the articles carried in such stores would be on the border line, and it would be unreasonable to require a purchaser to determine what could be mortgaged and what could not. To require an examination of the records for liens in such cases would break up the business, and indeed be an embargo on legitimate trade. Capital must seek a more substantial security for its protection. Otherwise, it were better that the few should suffer than the general public, who have been lured into purchasing from a dealer who has been intrusted with the *indicia* of ownership. A purchaser in such case is not bound to see to the application of the purchase money.

"It is true that, as a rule, the seller of personal chattels cannot confer upon a purchaser any better title than he himself has; but, if the owner stands by and permits a seller, who is a licensed dealer in such goods, to hold himself out to the world as owner, to treat the goods as his own, place them with other similar goods of his own

in a public showroom, and offer the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting his ownership against a purchaser for value without notice of his title. The constructive notice furnished by a recorded mortgage or deed of trust in such cases is not sufficient. The act of knowingly permitting the goods to be so handled and used by the seller in the ordinary and usual conduct of his business is just as destructive of the rights of the creditor as if such permission had been expressly granted in the mortgage or deed of trust.''

The case was decided upon the principle that, where one of two equally innocent persons must suffer, he should bear the burden whose conduct has induced the loss. In the present case, the England National Bank took mortgages from time to time upon the automobiles of the Yale Automobile Company, which were to be placed on sale and sold by said company. If these mortgages are to be considered valid, no one would be safe in purchasing a car from a dealer until he first went to the records at the county seat and made an examination to see if there was a chattel mortgage on the car which he was about to purchase, and he also would have to see to it that the mortgage was released or that the purchase price of the car was paid to the mortgagee.

The mortgage given by the Yale Automobile Company to the England National Bank contained a provision that the former company was to retain possession of the automobiles as long as the mortgagee deemed its security safe, and provided that the bank might take possession of the automobiles described in the mortgages at any time it might deem the security unsafe. It is also true that the mortgages contained a provision that the mortgagor agreed, until payment of the said indebtedness, to hold and keep all of said automobiles in brand-new condition and not to operate any of them for demonstration or for any other purpose; and agreed, further, not to sell, loan, rent, deliver, mortgage, pledge, or otherwise dispose of any of said automobiles until he should

obtain from the bank an instrument in writing releasing the said automobile from the terms of the mortgage.

This does not help the case of the bank any. Indeed, it shows that it was the obvious intention of the parties that the automobiles should be exhibited for sale; and, from the long course of dealing between the parties and the number of mortgages given, it is plainly inferable that, while the mortgage stipulates against sale, conversion or removal of the automobiles without the written consent of the bank, the stipulation was waived, if its violation was knowingly permitted by the bank. It is plainly inferable from the length of the time the transactions in question were in progress, and from the number of mortgages taken by the bank, that it must have known that the automobiles were being sold and that the proceeds were not being applied to the payment of its indebtedness.

It is said in the case cited that it would be a travesty on justice and a fraud on the rights of third persons to permit a creditor to take such chattel mortgages as were taken in this case and immediately destroy their effect by permitting a use of the property inconsistent with the terms of the mortgages. In that case the court further said that it was immaterial whether the permission to use the property as owner was given contemporaneously with or subsequent to the mortgage. In either event it has the same effect as if it had been set out in the mortgage. The case cited above was followed by the Virginia Supreme Court of Appeals on the same day in *O'Neil* v. *Cheatwood,* 102 S. E. 596.

This view is in accord with our previous decisions bearing on the question. In *Lund* v. *Fletcher,* 39 Ark. 325, it was held that a mortgage of articles of merchandise left in the possession of the mortgagor, with power to sell in the ordinary course of business, is void except between the parties to it. The court had under consideration a mortgage of a stock of drugs, paints, glassware, etc., and the majority of the court approved the views on this question expressed by Chancellor Cooper of Ten-

nessee, considering them based on good reason and sound policy. In adopting the views of Chancellor Cooper for the decision of the case, the court said: "That eminent jurist, whose ability, judicial temperament and profound study entitle his opinions to the highest consideration, whilst conceding that a mortgage may be made to cover after-acquired property, and that there may be left in the mortgagor a limited power of disposition, such as tools, machinery, rolling stock, etc., denies that such power or disposition consists with a valid lien on personal goods, which can only be profitably used as articles of commerce. He says that such a fluctuating lien, opening to release what is sold, and to take in what may be purchased, is invalid in law, and not enforceable in equity."

In *Gauss Sons* v. *Doyle & Co.,* 46 Ark. 122, it was held that, when there is an agreement or understanding between the mortgagor and mortgagee of a stock of goods that the mortgagor may remain in possession of the goods and sell them as his own, the mortgage is as fraudulent and void as to other creditors as if the agreement were expressed in the mortgage; and, to arrive at their true meaning, the concurrent acts, surrounding circumstances and subsequent conduct of the parties are taken together for the consideration of the court or jury trying the issue. It was further held that it was against public policy for the mortgagor to remain in possession and sell the mortgaged goods, except as agent of the mortgagee.

This principle was again recognized in *Felner* v. *Wilson,* 55 Ark. 77, where it was held that a mortgage of a stock of goods was not invalidated by a provision that the mortgagor should retain possession of the property as agent of the mortgagee and sell for him. This view of the law is supported by the Supreme Court of the United States in *Robinson* v. *Elliott,* 22 Wall. 513.

The Citizens' Loan & Investment Company and the General Motors Acceptance Corporation were *bona fide* creditors of the Yale Automobile Company. We think that the England National Bank, in taking the mort-

gages under the circumstances alleged in the.cross-complaint, can stand on no higher footing than one who sells to a retailer and gives him the power of sale to his customers.

Therefore we are of the opinion that the mortgages given by the Yale Automobile Company to the England National Bank are void as to the claims of the Citizens' Loan & Investment Company and the General Motors Acceptance Corporation against the Yale Automobile Company. It follows that the decree of the chancery court was correct, and must be affirmed.