GENERAL CONTRACT PURCHASE CORPORATION *v.* CLEM.

4-9801                                    251 S. W. 2d 112

Opinion delivered June 16, 1952.

Rehearing denied October 6, 1952.

*Guy B. Reeves* and *John F. Park,* for appellant.

*H. B. Stubblefield,* for appellee.

ROBINSON, J. Appellee, Clem purchased an automobile from the Turner Motor Company of Stuttgart, and in payment thereof gave his check in the sum of $1,857. Clem received information that appellant, Gen-

eral Contract Purchase Corporation, held a mortgage on the car and, upon inquiry of Walter Shuberg, vice-president of appellant Corporation, this information was confirmed. Clem informed Shuberg that he had given his check in payment of the automobile at the time of purchase, whereupon Shuberg advised Clem to turn the car over to General Contract Purchase Corporation and stop payment on his check. About two days later, Shuberg gave Clem a letter stating that in consideration of Clem releasing the car to appellant, appellant would "exonerate" him from any and all claims against the car. The letter is dated June 2nd. However, Shuberg testified that he had obtained possession of the car a few days before that date; that he had advised Clem about the mortgage and told him that he, Clem, was holding the car subject to the orders of General Contract Purchase Corporation.

Prior to the sale of the automobile to Clem, the Turner Motor Company had given to General Contract Purchase Corporation a check in the sum of $1,255.99, drawn on Peoples National Bank at Stuttgart, and there were not sufficient funds in Turner Motor Company's account to pay the check. Therefore, the Bank, since it would not permit Turner's account to be overdrawn, held the check and when Turner deposited Clem's check in the sum of $1,857, the Bank treated it as a cash item and gave Turner credit for that amount on his account, thereby making good the check for $1,255.99, which amount the Bank paid to appellant. Since Clem had stopped payment on the $1,857 check, payment was refused by the Bank on which the check was drawn.

Peoples National Bank of Stuttgart, holder in due course of Clem's $1,857 check, sued him and got judgment for the $1,255.99 it had paid appellant, General Contract Purchase Corporation, on the check which had been given it for that amount by Turner Motor Company. Clem then sued appellant herein, General Contract Purchase Corporation, to replevy the automobile. Later he filed an amended complaint asking judgment for conversion of the car and for money had and received in the

sum of $1,255.99, and asked that the case be transferred to equity. When the case was tried in Chancery Court, a decree was rendered for Clem against General Contract Purchase Corporation in the sum of $1,255.99. From that decree comes this appeal.

Appellee cross-appealed contending that he should be allowed interest from the date he paid the judgment obtained by the Peoples National Bank of Stuttgart.

We think the Chancellor's decree in favor of appellee in the principal sum of $1,255.99 is correct, and that interest should be added thereto.

In the first place, appellant could not have legally taken the car from Clem even though it held a mortgage. Appellant had permitted the car to remain in possession of Turner Motor Company for the very purpose of being sold and it was sold to Clem, who appears to be a *bona fide* retail purchaser for value of such vehicle, Ark. Stats. § 51-1007. Furthermore, this court has held that goods and chattels exposed daily for indiscriminate sale to the general public at the place of business of the owner, and over which the retailer or merchant is permitted to exercise dominion, cannot be made the subject of a valid chattel mortgage. *Endicott-Johnson Corporation* v. *Davis*, 186 Ark. 788, 56 S. W. 2d 178; *Coffman* v. *Citizen's Loan & Inv. Co.*, 172 Ark. 889, 290 S. W. 961; *Buchanan*, v. *Commercial Inv. Trust*, 177 Ark. 579, 7 S. W. 2d 318; *Ebbing* v. *Hassler,* 188 Ark. 766, 68 S. W. 2d 96.

The car was turned over to appellant on suggestion of Shuberg, its vice-president, who also suggested that payment be stopped on the check given as purchase price of the automobile. But, it was too late to stop payment on the check as it had been treated by the Bank as a cash item and credited to Turner's account. Thus, $1,255.99 of Clem's money was paid to appellant by reason of his inability to stop payment on the check, as suggested by Shuberg. It is true that the $1,255.99 check cashed for appellant, the payee named therein, had not been given by Turner Motor Company to appellant in connection with the sale of the automobile to Clem. But, neverthe-

less, in the final analysis, by Clem doing what appellant requested he do, appellant got possession of the automobile and $1,255.99 paid out by Clem, which sum it would not have received except by reason of the co-operation of Clem in following out the method suggested by appellant of handling the transaction. It simply would not be equitable to permit appellant, in the circumstances, to keep both the automobile and the money.

With reference to a suit for money had and received, in 2 R. C. L., at p. 778, it is stated: "Though an action at law, it is equitable in its nature and is said to resemble a bill in equity and to lie wherever a bill in equity would lie. . . . It is not dependent, however, upon an express promise, or even upon one implied in fact, but is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it. . . . This is so irrespective of whether the money was received from the plaintiff or from a third person." The foregoing quotation is cited with approval in *Patton* v. *Brown-Moore Lbr. Co.,* 173 Ark. 128, 292 S. W. 383.

"Generally, when money is paid to another under the influence of a mistake of fact—that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money and it would not have been paid had the person making the payment known that the fact was otherwise, it may be recovered. The ground upon which the right of recovery rests is that money paid through misapprehension of facts belongs, in equity and in good conscience, to the person who paid it." 4 Am. Jur. 515. Both Clem and Shuberg were mistaken as to being able to stop payment on the check.

In 58 C. J. S. 913, it is said: "The main principle by which to test the matter is whether in equity and good conscience, in view of the special facts of the case, defendant is entitled to retain the money as against plaintiff"; and at p. 914: "Restitution does not presuppose a wrong by the person who received the money, and the presence of actual fraud is not essential to the invocation of the remedy. . . . The test is whether defendant has

a right to retain the money, not whether he acquired possession honestly or in good faith." It is further stated in 58 C. J. S. 921: "It is not necessary, however, to prove that money belonging to plaintiff was actually and physically given to, and received by, defendant, as it is sufficient to show that defendant has money in his possession belonging to plaintiff which he cannot conscientiously retain."

It is presumed that Clem and Shuberg both knew that, under the law, Clem could not be compelled to surrender the car to Shuberg's Company, and it is not reasonable to believe that Clem would have released possession of the car or that Shuberg would have expected him to do so unless payment could be stopped on the check, which, therefore, was a contingency in the transaction. Since Clem was unable to stop payment, coupled with the additional fact that $1,255.99 of the money represented by the check was actually paid to appellant, the trial court was correct in holding that appellee should be reimbursed by appellant for that amount.

On the 15th day of November, 1950, Clem paid the judgment which the Peoples National Bank of Stuttgart had obtained against him, and we think he should be allowed interest on the $1,255.99 from that date as contended in his cross-appeal.

Therefore, the cause is affirmed on appeal and reversed on cross-appeal with directions to allow Clem 6% interest on $1,255.99 from November 15, 1950.