JAMES TALCOTT, INC., Plaintiff,

v.

ASSOCIATES DISCOUNT CORPORA-TION, and Mr. and Mrs. F. C. McConnell, d/b/a McConnell Heavy Hauling, Defendants.

No. LR 60 C 78.

United States District Court

E. D. Arkansas, W. D.

April 20, 1961.

W. P. Hamilton, Jr. (of Moore, Chowning, Mitchell, Hamilton & Burrow), Little Rock, Ark., for plaintiff.

A. L. Barber (of Barber, Henry, Thurman & McCaskill), Little Rock, Ark., for defendants.

YOUNG, District Judge.

This is an action to replevin an Insley dragline. Jurisdiction under 28 U.S.C. § 1332 (1958) has been established. The cause was tried to the Court sitting without a jury on February 27, 1961; upon consideration of the pre-trial briefs of the parties, the evidence adduced at trial, and the briefs submitted after trial, I have decided that the plaintiff cannot prevail and accordingly find in favor of the defendants.

The McConnells are merely nominal parties to this action as they hold possession of the machine in question subject to the determination of title and the right to possession. Both plaintiff, James Talcott, Inc., and defendant, Associates Discount Corporation, are the assignees of conditional sales contracts and of purchase-money notes executed by different purchasers of the same dragline.

On November 3, 1958, Kern-Limerick sold the dragline in question to H. D. Stayton, who executed the note and conditional sales contract now held by Associates Discount. In the summer of 1959 Stayton, being dissatisfied with the dragline, returned it to Kern-Limerick for repairs; Associates granted Stayton a two-month extension of his payment schedule upon the payment of the required fee, assertedly in recognition of the fact that due to the repairs he would not be able to use the dragline in August and September, the months for which the extension was granted. It is undisputed that the payment of the extension fee was made by Kern-Limerick on its own check; further, the December 1959 monthly payment to Associates was made by Kern-Limerick on its own check, as was another extension fee in March of 1960. All other payments to Associates were received from Stayton.

It is now clear that in the fall of 1959 Stayton traded the dragline here in question to Kern-Limerick for a different dragline, but that Kern-Limerick did not pay Associates, as it was contractually obligated to do, the balance on the outstanding conditional sales contract and note; instead, with the exceptions noted above, it supplied Stayton with the amount of each monthly payment which he forwarded to Associates until May of 1960. In that month Kern-Limerick became bankrupt. It is also clear from the record, though not explained, that the serial number of Stayton's new dragline was changed to that of the machine traded-in, and that Stayton actively participated in concealing from Associates that he no longer had the original dragline, even after his wife had informed an agent of Associates of the true situation. The claim of title of plaintiff, James Talcott, Inc., derives from the resale of the original dragline by Kern-Limerick to one J. W. Spires, who executed the instruments now held by Talcott on November 6, 1959. Spires made irregular payments to Talcott until June 1, 1960, when Associates took possession of the dragline from him.

The sale to Stayton was bona fide, with possession passing to him. Talcott insists, however, that by either the principles of agency or of estoppel Associates should be bound by the action of Kern-Limerick in reselling the dragline in question to Spires, so that the title derived by Talcott from such second sale is to be taken as superior to that of Associates, relying upon such cases as Kirkpatrick Finance Co. v. Stotts, 1932, 185 Ark. 1089, 51 S.W.2d 512; Coffman v. Citizens' Loan & Investment Co., 1927, 172 Ark. 889, 290 S.W. 961; and those collected in 72 A.L.R.2d 342 ("Relative rights as between assignee of conditional seller and a subsequent buyer from the conditional seller after repossession or the like"). In support of this contention Talcott introduced evidence as to the course of dealings between Associates and Kern-Limerick in an attempt to show that Kern-Limerick, in reselling the dragline to Spires, was the agent of Associates, or that this resale was ratified by Associates, or that, because of the established course of dealings between the two companies, Associates is estopped from now denying the agency as to this particular transaction under the theory that he who places another in a position

to do harm must bear the loss himself as against an innocent third party thereby damaged. Another basis of this asserted estoppel, plaintiff states, would be the settled rule that one cannot ratify only the favorable part of a transaction, but must take the responsibilities with the benefits.

As to the course of dealings between Kern-Limerick and Associates, it was established that Kern-Limerick often assisted Associates in the collection of delinquent accounts; that because of the endorsement with recourse given by Kern-Limerick, Associates usually left the final decision as to repossession to Kern-Limerick; that when a machine was repossessed Kern-Limerick had to bring the payments up to date and make the payments coming due while the machine was in its possession; and that when Kern-Limerick made payments on delinquent accounts Associates was informed in the instances where the payments were actually advances to customers by Kern-Limerick. Kern-Limerick had a free hand in taking trade-ins on sales of machinery and in selling repossessed machinery, and in either case, if the machine was subject to a conditional sales contract held by Associates, would request from Associates the amount of the "pay-off" balance on the contract; this balance would be paid within a few days of the new sale or trade. Some new sales were financed through Associates, some through other finance companies, but Associates asserts that prior to Kern-Limerick's bankruptcy it knew of no occasion where it was not paid in normal course on a machine traded-in, or on a repossessed machine which was resold. It did acknowledge that on several of its bi-monthly inspections of repossessed equipment held by vendors it learned that Kern-Limerick had resold a repossessed machine, and that in such instances it diligently hounded Kern-Limerick until it received the "pay-off" balance. In January of 1960 Associates learned that Kern-Limerick had misrepresented the down-payments on some sales, and suspended dealings with Kern-Limerick until it checked its accounts to verify the reported terms of the sales; other than this, Associates states, its dealings with Kern-Limerick prior to bankruptcy were satisfactory. Though it informed buyers to make their payments to Associates, it readily accepted payments left with, and delivered by, Kern-Limerick, and on at least one occasion, to keep its accounts from being overdue more than 90 days, it required Kern-Limerick to advance over $13,000 on delinquent contracts on which it was the endorser.

Further, it was established that on one occasion Associates was told by Stayton that he had talked to Kern-Limerick about trading-in the dragline here in question toward the purchase of another, but that Kern-Limerick subsequently informed them that the machine was to be repaired and requested an extension of payments on behalf of Stayton, which was granted as previously mentioned. There is no evidence that Associates did not honestly believe that Stayton had retained his original machine at least until April of 1960, when Mrs. Stayton disclosed the truth of the situation, though Kern-Limerick and Stayton managed to satisfy them otherwise until the bankruptcy of Kern-Limerick in May.

This is not an instance of a first sale which does not divest the vendor of possession, nor is it an instance of a mortgage given by a vendor on goods held for sale in the normal course of his business, as in Coffman, supra, nor does it concern the standing of an innocent purchaser for value without notice of the prior conditional sales as against the assignee of such first conditional contract; rather, it concerns the standing of the first assignee finance company as against the assignee finance company of the second sale, a finance company which dealt with Kern-Limerick on substantially the same terms as Associates, using it to assist in delinquent collections from time to time, allowing it a free hand in reselling repossessed machinery, and giving it the right to accept encumbered machinery as

trade-ins on sales, subject only to satisfaction of the unpaid balance due.

 As stated, Associates was without notice of the sale to Spires, and I find nothing to indicate that it would have ratified the transaction, had it known, on any terms other than the immediate payment by Kern-Limerick of the balance owing upon the account. Given the admittedly bona fide first sale to Stayton, and lacking any ratification of Kern-Limerick's surreptitious resale to Spires, I can find no legal or equitable reason why the normal rule that one who buys from a vendor who has no title obtains none, no matter how much he may pay or how honestly he may buy, should not apply in this case. In Securities Investment Co. of St. Louis v. Williams, D.C.1960, 190 F.Supp. 261 (Henley, Chief Judge), this court reviewed the Arkansas law as to multiple sales of the same property, and there is no need to supplement that discussion for the purposes of this case; it suffices to say that I can find no exception to the normal rule of title that applies to these facts.

 The acts of Associates must be viewed in retrospect and not with our present knowledge of Kern-Limerick's deceptions; so viewed, it may be seen that Associates exercised more caution in its dealings with Kern-Limerick than did Talcott, Inc., who dealt for the most part by long distance phone calls, and not by personal contact and periodic inspection, as did Associates. Again, should Associates be charged with the knowledge that Stayton did not have the machine after being so told by his wife on April 4, 1960, still no prejudice resulted to Talcott, for in the period between April 4 and June 1, 1960, when Associates took possession of the machine from Spires, Talcott received five of the seven payments made by Spires on his note.

Judgment will be entered in accord with this memorandum of decision, dismissing the complaint with prejudice, with defendant to have his costs herein; Mr. and Mrs. F. C. McConnell, d/b/a McConnell Heavy Hauling, are hereby ordered to deliver possession of the Insley dragline here in question—Model L, serial number 8496—to Associates Discount Corporation, with plaintiff to be discharged upon its replevin bond.