Majel Penney SHIPMAN *v.* D. R. (Runyan) PENNEY
and wife, Tommye PENNEY

CA 79-316                                    598 S.W. 2d 450

Court of Appeals of Arkansas
Opinion delivered April 23, 1980
Released for publication May 14, 1980

*Boyd Tackett, Jr.,* for appellant.

*Honey and Rodgers* by: *Danny P. Rodgers,* for appellees.

GEORGE HOWARD, JR., Judge. This is an appeal from a chancery court decree dismissing appellant's complaint seeking a cancellation of two warranty deeds she executed to appellees conveying real property, purportedly for safekeeping, which appellees sold to third persons; and a cross-appeal by appellees from a decree awarding the appellant a judgment for $19,000.00 for a coin collection appellant delivered to appellees for safekeeping.

The relevant facts are: Appellant, in 1973, was a party to a divorce action in Dallas, Texas. Upon the advice of her brother, appellee D.R. Penney, appellant conveyed certain Arkansas real estate, one tract consisting of 105 acres and another consisting of 17 acres, to appellees for safekeeping. A valuable coin collection and several guns were also purportedly delivered to D.R. Penney for safekeeping.

Appellant claims that the appellees executed, on the same day that she executed her deeds to appellees, a deed of conveyance to the real property back to the appellant, but these deeds were never recorded and that during a visit to appellant's home, appellees took the deeds without her knowledge and consent; and that she has not been able to locate them.

On the other hand, D.R. Penney testified that the conveyances were in consideration of an indebtedness owed by appellant in the sum of $33,500.00. The brother admitted that he received the coin collection set for safekeeping; and that he sold the coins for $1,100.00; and that $1,000.00 of this money was deposited to an account in appellant's name at First National Bank of Ashdown. Appellee, however, denied that he received any guns belonging to the appellant for safekeeping.

It is well settled that while an appeal from a chancery court decree is reviewed *de novo,* the appellate court will affirm

the action of the trial court where the decree is supported by a preponderance of the evidence.

After carefully reviewing the record, we are persuaded that the decree of the chancery court is supported by a preponderance of the evidence. A trial judge possesses one advantage that the appellate judges do not enjoy, namely, the opportunity, during the course of a trial, to observe the demeanor, conduct, disposition and the reaction of witnesses under both direct and cross-examination while we simply have the written record before us. While this, alone, is not totally dispositive, it does, however, have some relevance in seeking to arrive at the truth in a controversy, especially when the issues are sharply contested and the evidence is practically equipoised.

D. R. Penney testified that in 1969, he loaned the appellant $33,500.00 and that appellant deeded the real property in question to him in satisfaction of the debt; and that the lands in question are valued at approximately the amount of the indebtedness. While the appellant testified on direct examination that she never owed her brother anything "in her life", there was no testimony offered in rebuttal to refute the brother's testimony that he gave on direct examination.

Attorney Garnet E. Norwood could not testify positively that he either prepared the two deeds purportedly executed by appellant conveying the property to appellees or whether he prepared four deeds, two involving the conveyance to appellees and two involving a purported reconveyance of the property to appellant. Mr. Norwood stated that his records reflected a payment of $40.00 for legal work having been performed for D.R. Penney, or someone representing himself as D.R. Penney; but, in any event, he had no personal recollection that the $40.00 was for four deeds.

D.R. Penney admits that he received appellant's coin collection set for safekeeping and sold the set for $1,100.00; and that $1,000.00 was placed in an account in appellant's name at First National Bank of Ashdown. This is tantamount

to an admission that the coins were disposed of while they were in his possession for safekeeping for appellant.

The proof is deficient in showing that appellees also took possession of any guns belonging to appellant.

Affirmed.

WRIGHT, C.J., and NEWBERN, J., concur.

DAVID NEWBERN, Judge, concurring. The complaint in this case sought cancellation of a deed the appellant made to the appellees conveying land of which the appellees are still possessed. It also asked for "the fair market value" of the other tract which was no longer in the appellees' possession. It also asked that the appellees be "directed by the court to turn over all personal property belonging to the plaintiff [appellant]." Thus, the complaint seemed to seek several different kinds of remedies which could have been available based on a number of theories of recovery.

## 1. *The Deeds*

In his memorandum opinion, the chancellor did not reveal the theory upon which he denied the appellant's requested remedies with respect to the deeds. He said simply that the "plaintiff [appellant] has failed to meet her burden of proof in regards to the deeds." We do not know whether he meant her burden to show the deeds she executed were procured by fraud or in trust, or whether he meant the deeds back to her which she said had disappeared — perhaps a "lost deed" theory.

I can go along with the result in affirming this decision because I do not believe the chancellor's decision was clearly erroneous or against the preponderance of the evidence, no matter which theory is under discussion, but I do believe he should have discussed them, and so should we.

To construct a trust, our supreme court has required a strong showing of a confidential relationship between the parties or intentional fraud. *Thom v. Geyer,* 254 Ark. 716, 497

S.W. 2d 689 (1973); *cf. Henslee* v. *Kennedy,* 262 Ark. 198, 555 S.W. 2d 937 (1977). A party seeking to show a lost deed must do so by the "clearest, most conclusive and satisfactory proof." *Hill* v. *Jones,* 219 Ark. 904, 245 S.W. 2d 573 (1952); *Erwin* v. *Kerrin,* 169 Ark. 183, 274 S.W. 2 (1925).

## 2. *The Coins*

We cannot identify the theory the chancellor used to justify the $19,000 judgment stemming from the coin collection transfer. His memorandum specifically rejected express or constructive trust but went on to speak of the standard of loyalty owed by a brother to a sister with the following language:

> . . . but this court finds that the Defendant, Runyan Penney took possession of the involved coin collection for safekeeping and a brother and sister relationship existed and the defendant owed a reasonable standard of good faith, prudent dealing and loyalty to his sister in holding the coin collection.

Later in his opinion, the chancellor mentioned a duty to "account" for the coin collection. Whether he had in mind an "accounting" in the sense of the traditional equitable remedy or perhaps the traditional law court count in assumpsit of money had and received, *Wilson* v. *Biles,* 171 Ark. 912, 287 S.W. 373 (1926); *General Contract Purchase Corp.* v. *Clem,* 220 Ark. 863, 251 S.W. 2d 112 (1952), the evidence was not really in question that the appellee D. R. Penney had received the coins and disposed of them. However, the only evidence of what he actually received for them was his own statement that he received $1,100. The $19,000 judgment was based on evidence the coins were worth $20,000, and Penney had returned only $1,000. This award clearly does not fit the "accounting" mold, as the appellee is not being compelled to account for what he has received. Although it also does not fit the general "unjust enrichment" theory of assumpsit, I agree with Professor Dobbs that a fair result can be reached by refusing to limit assumpsit to that theory and permitting recovery of the value of the converted item. See Dobbs, *Remedies,* pp. 416-417 (1973), citin *Felder* v. *Reeth,* 34 F. 2d

744 (CA 9 1929). Thus, by applying the equity clean-up doctrine, I can agree the chancellor had the authority to award this assumpsit remedy.

This discussion may seem to have been superfluous, but I do not believe courts, either trial or appellate, should decide cases without making clear the legal bases for the decision, in addition to the factual ones.

Chief Judge Wright joins in this concurring opinion.